## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 9:17-cv-80432-DMM

**ADT, LLC and ADT US HOLDINGS, INC.,**

      Plaintiffs,

v.

**VIVINT, INC.,**

      Defendant.

_____/

### DEFENDANT VIVINT, INC.'S MOTION TO COMPEL PLAINTIFFS TO PRODUCE DOCUMENTS IN RESPONSE TO DEFENDANT'S SECOND REQUEST FOR DOCUMENTS DIRECTED TO PLAINTIFFS

Defendant Vivint, Inc. ("Vivint"), pursuant to Fed. R. Civ. P. 26, 34, and 37, as well as S.D. Fla. L.R. 26.1(g)(2), hereby moves this Court for an order overruling certain of the objections asserted by Plaintiffs ADT, LLC and ADT US Holdings, Inc. (collectively, "Plaintiffs" or "ADT") in response to Defendant's Second Request for Documents Directed to Plaintiffs (the "Second Request") and compelling Plaintiffs to produce the corresponding withheld documents.  In support thereof, Vivint states as follows:

### Introduction

The crux of Plaintiffs' Complaint (ECF No. 1) is that Vivint, a competitor in the electronic security equipment and services industry, has allegedly diverted customers away from Plaintiffs as a result of certain purported sales tactics and that, according to Plaintiffs, Plaintiffs have purportedly suffered compensatory damages "believed to be no less than $20,000,000."  Based on that theory, Plaintiffs have asserted claims for unfair competition under the Lanham Act, common

law unfair competition, violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), and trade slander/commercial disparagement.

The main focus of the Second Request is to obtain critical discoverable information regarding Plaintiffs' wide-ranging damages theories.[1]  Under the Lanham Act count (Count I), Plaintiffs seek "compensatory damages, as well as Vivint's profits," among other relief, quantifying the "[c]ompensatory damages, in an amount to be established at trial, but believed to be no less than $20,000,000."  (Complaint, at ¶ 90 and "Wherefore" clause of Count I.)  In the common law unfair competition count (Count II), Plaintiffs make the same demand for "[c]ompensatory damages, in an amount to be established at trial, but believed to be no less than $20,000,000."  (*Id.*, at "Wherefore" clause of Count II.)  In the FDUTPA count (Count III), Plaintiffs allege that "ADT has been aggrieved by Vivint's violations of the Act, and is entitled to its actual damages suffered as a result of those violations," seeking "[a]ctual damages as provided by Fla. Stat. § 501.211(2), in an amount to be established at trial, but believed to exceed $20,000,000."  (*Id.*, at ¶ 107 and "Wherefore" clause of Count III.)  In the count for Trade Slander/Commercial Disparagement, Plaintiffs allege that the purported "statements are injurious and damage ADT in its industry and marketplace by causing ADT to lose sales and good will, and to suffer injury to its reputation," and they seek "[c]ompensatory damages, in an amount to be established at trial, but believed to be no less than $20,000,000."  (*Id.*, at ¶ 114 and "Wherefore" clause of Count IV.)

The damages theories set forth in Plaintiffs' Rule 26(a)(1) Initial Disclosures (the "Initial Disclosures") are no less expansive.[2]  The Initial Disclosures state that Plaintiffs are pursuing six

---

[1]     The Second Request is attached hereto as **Exhibit A**.

[2]     Plaintiffs' Third Amended Initial Disclosures are attached hereto as **Exhibit B**.

2

categories of damages:   (1) "Compensatory damages --- lost and disrupted customers"; (2) "Compensatory damages --- injury to reputation and goodwill"; (3) "Compensatory damages --- forced royalty"; (4) "Vivint's profits"; (5) "Punitive damages"; and (6) "Costs and attorney fees." (*See* **Exhibit B**.)

In light of these allegations, the Second Request seeks documents such as audited financial statements, corporate transactions agreements, and other documents related to Plaintiffs' damages claims.  The requested materials are designed to obtain an understanding of Plaintiffs' damages claims as well as to provide Vivint an opportunity to obtain information beyond what Plaintiffs have arbitrarily deemed to be those limited documents that will support their claims.  Quite simply, Vivint is also entitled to materials which may be used to rebut Plaintiffs' allegations and damages theories.

Plaintiffs have even stonewalled Vivint's attempts to obtain basic damages information through the Rule 26(a)(1) initial disclosure process.  Specifically, Plaintiffs' Initial Disclosures failed to provide the required computation of damages.  Even after Vivint took issue with these deficient disclosures, pointing out in painstaking detail the deficiencies and citing the legal authority substantiating that the Initial Disclosures did not meet the standard under the Rules, Plaintiffs continued to shirk their obligations to provide the information.  At best, Plaintiffs responded with the hollow representation that, as to some damages categories, they would eventually supplement their disclosures and as to others they were "unable to state its losses with certainty."[3] *See* Exhibit B at p. 9.  Plaintiffs did not comply, and Vivint has attempted to obtain the withheld information through written discovery (including the Second Request).

---

[3]     To perpetuate the shell game, Plaintiffs have claimed that they will not know how to support their damages without expert opinions.  That appears to have been a ruse.  Plaintiffs have since made their expert disclosures, and several categories of damages are not being covered by

Plaintiffs' Complaint and Initial Disclosures, coupled with Plaintiffs' Response to Vivint, Inc.'s Second Request for Documents[4] and Plaintiffs' failure to provide required damages information in their Initial Disclosures, make abundantly clear that Vivint is being set up for a trial by ambush regarding Plaintiffs' alleged damages.  The common theme in most of Plaintiffs' individual responses to the Second Request is that (1) Plaintiffs object to them (mainly on the basis of relevance), (2) Plaintiffs re-phrase the requests as if to suggest what limited information Plaintiffs are willing to produce, (3) Plaintiffs do not comply with Rule 34's requirement that Vivint be clearly apprised as to what documents are being withheld, and (4) Plaintiffs, in essence, state that much of the information will only be disclosed in the form of expert reports.  That is unacceptable, and it does not comply with the Rules.

The Federal Rules of Civil Procedure make clear that the days of playing "hide the ball" when it comes to damages issues are over.  Indeed, the procedure is now set up such that, even before discovery requests are served, a party is required to provide:

> a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered.

Fed. R. Civ. P. 26(a)(1).  Thus, the Rule contemplates that there is a presumption that, if a party is claiming damages, related "documents or other evidentiary material" must be provided at the outset of the case--- which belies Plaintiffs' position that the production of damages materials must wait and be limited to the form of an expert report.  Notably, the Rule requires that the documents

---

an expert--- including categories for which Plaintiffs have, to date, failed to make any attempt to provide any substantiation.

[4]    A copy of the response is attached hereto as **Exhibit C**.

and materials to be produced are to cover the "nature and extent of injuries suffered." In this case, the "nature and extent of injuries suffered" is a hotly-contested issue.

But, the discovery is not just limited to what the producing party believes will support its claims. Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim *or defense* and proportional to the needs of the case. . ." Fed. R. Civ. P. 26(b)(1) (emphasis added). Thus, defendants, like Vivint, are entitled to seek discovery to defensively challenge a plaintiff's assertions.

For the reasons discussed below, Plaintiffs' efforts to obstruct discovery on damages issues should not be tolerated, and Plaintiffs should be ordered to immediately produce all of the requested material.

<u>Argument</u>

Pursuant to S.D. Fla. L.R. 26.1(g)(2), Vivint sets forth the subject requests and responses, followed by the reasons assigned as supporting an order compelling production of the requested material.

## I.     <u>REQUEST NO. 1</u>

**Request:**

All audited financial statements of ADT, LLC, for the time period from January 1, 2013, to the present, inclusive.

**Response:**

ADT objects to this request seeking audited financial statements as overbroad and unrelated to the claims and defenses in this case. In particular, none of the information that would be in the requested documents, if any, is relevant to ADT's damages. ADT expects to rely on expert witness testimony to establish the value of lost accounts by reference to the account's value in the market for purchasing and selling customer accounts. Thus, the accounting records sought in this request have nothing to do with ADT's damages calculation for actual damages, In addition, ADT's generalized finances reflected by any such financial statements are not

relevant to the claims in this lawsuit which relate to specific customers subjected to Vivint's deceptive sales practices.

**Reasons Assigned as Supporting the Motion:**

As a threshold issue, it should be noted that the format of Plaintiffs' response does not comply with the dictates of Rule 34. The pertinent portions of Rule 34 require:

> For each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons. The responding party may state that it will produce copies of documents or of electronically stored information instead of permitting inspection. The production must then be completed no later than the time for inspection specified in the request or another reasonable time specified in the response. . . . An objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest.

Fed. R. Civ. P. 34(b)(2)(B)-(C). While Plaintiffs appear to be making a "relevance" objection to this request, they wholly ignore Rule 34's requirement that "[a]n objection must state whether any responsive materials are being withheld on the basis of that objection." Merely advising that Plaintiffs intend to rely on expert testimony, and leaving Vivint to guess as to what Plaintiffs might (or might not) produce, falls woefully short of Plaintiffs' obligations. The objection should be stricken, and the documents ordered produced, for that reason alone.

In any event, Plaintiffs' relevance objection lacks support. The requested information is highly relevant.

Plaintiffs have asserted vague and completely open-ended damages claims. In addition to Plaintiffs' assertion of generic claims for "compensatory damages," it is important to note that Plaintiffs have also specified that they are seeking "actual damages," "los[t] sales and good will," and "injury to [] reputation." (*See* Complaint.) These are the precise type of damages claims that open the door for a defendant to demand comprehensive financial discovery, including the audited financial statements requested in Request No. 1.

6

The court's analysis in *Exist, Inc. v. E.S.Y., Inc.*, 2015 WL 926003 (S.D. Fla. Mar. 4, 2015), provides a good illustration as to the propriety of this type of discovery in cases like this. In that case, similar to the case here, the defendant sought broad financial discovery on the basis that it was relevant to the plaintiff's claims of infringement and unfair competition under federal and state law. *Id.* at * 2. The defendant sought documents such as ledger books, ***financial statements***, raw financial or quantitative data, tax returns, and documents filed with the Internal Revenue Service, among others. *Id.* at *2 n.1. In a cogent analysis, the court held:

> In this case, Plaintiff explicitly requests a judgment in the amount of its "actual damages," including "all profits to each Defendant plus all losses to [Plaintiff]." According to Plaintiff, Defendants' conduct has caused "substantial damages to [its] business ..., as well as additional general and special damages,", and damage to its "rights, reputation, and goodwill". ***Because these allegations necessarily put Plaintiff's financial status before, during, and after the alleged wrongful conduct at issue, Plaintiff's financial information is relevant and thus generally discoverable***. To find otherwise would permit Plaintiff to seek to hold Defendants' liable for the actual damages to its business without affording Defendants a reasonable opportunity to explore the factual bases for Plaintiff's claims. Accordingly, the undersigned finds that ESY is generally entitled to discover financial information about Plaintiff's business.

*Id.* at *3 (citations omitted) (emphasis added); *see also Margel v. EGL Gem Lab Ltd.*, 2008 WL 2224288, at *6 (S.D.N.Y. May 29, 2008) (where plaintiff "seeks to retain the right to recover for damage to its goodwill," "sales, revenues, net incomes and lost profits are relevant to goodwill and that the information is, therefore, discoverable"). In this case, Plaintiffs' damages claims are remarkably similar. Plaintiffs seek "actual damages." (Complaint, at ¶ 107.) Plaintiffs allege "los[t] sales and good will." (*Id.*, at ¶ 114.) Plaintiffs also allege "injury to [] reputation." (*Id.*)

Plaintiffs cannot proceed with such damages theories and refuse to produce their audited financial statements.[5]

Plaintiffs' pursuit of loss of goodwill damages is particularly noteworthy.  As the Eleventh Circuit has noted in a case involving deficiencies in discovery disclosures involving claims related to goodwill, "[a] loss of goodwill claim compensates for harm to the value of the business as an ongoing concern and involves complex financial calculations, both before and after the infringement suit."  *Mee Indus. v. Dow Chemical Co.*, 608 F.3d 1202, 1222 (11th Cir. 2010) (holding that, "[b]ecause calculating the goodwill of a business and the harm to that goodwill that flows from a particular lawsuit will often involve complex financial calculations," district court did not abuse its discretion by excluding loss of goodwill theory of damages because of insufficient discovery disclosures), *cert. denied*, 562 U.S. 1138 (2011).  As this type of claim necessarily involves "complex financial calculations," documents such as audited financial statements come into play.  Plaintiffs' mantra in this case is that they are only willing to provide lopsided versions of alleged facts and events, including their own selective use of financial records to address damages issues.  Vivint is entitled to more than Plaintiffs' unilateral selection of materials in order to rebut Plaintiffs' damages claims.[6]

---

[5]     For this reason, the part of the objection that purports that this case is only about "specific customers" is inconsistent with Plaintiffs elsewhere claiming that they are entitled to damages for loss of goodwill and for injury to reputation.

[6]     Plaintiffs have indicated that they would consider producing the requested documents for the limited time period wherein they were part of a public company.  However, that would not fully resolve the issue, as Plaintiffs' claims encompass time periods when Plaintiffs are and were part of a private company.  As noted below, with respect to Request No. 6, Plaintiffs are offensively using information concerning their acquisition by a private company.  Plaintiffs cannot have it both ways.

## II.    <u>REQUEST NO. 2</u>

**Request:**

> All audited financial statements of ADT US Holdings, Inc., for the time period
> from January 1, 2013, to the present, inclusive.

**Response:**

> ADT objects to this request seeking audited financial statements as overbroad and
> unrelated to the claims and defenses in this case. Further, ADT US Holdings, Inc.
> is a holding company and is not involved in the day-to-day operations of generating
> alarm account nor in the servicing of ADT customers. The information that would
> be in the requested documents, if any, is not relevant to ADT's claimed damages.
> In addition, ADT US Holdings, Inc.'s generalized finances reflected by any such
> financial statements is not relevant to the claims in this lawsuit which relate to
> specific customers subjected to Vivint's deceptive sales practices.

**Reasons Assigned as Supporting the Motion:**

The arguments raised above concerning Request No. 1 apply equally to Request No. 2, as they both concern audited financial statements.  As explained above, these records are discoverable and relevant to this case.  Likewise, Plaintiffs violate Rule 34 by failing to clearly articulate what documents they are withholding based on the objection.

The objection to Request No. 2 provides one additional wrinkle.  Plaintiffs suggest that, because ADT US Holdings, Inc. is a "holding company," it is exempt from discovery in this case.  Plaintiffs overlook the fact that ADT US Holdings, Inc. is a Plaintiff in this case.  The Complaint identifies ADT US Holdings, Inc., and ADT, LLC as "together, 'ADT'."  (Complaint at p. 1.)  Further, each count of the Complaint is asserted on behalf of both Plaintiffs.  As such, both Plaintiffs purport that they have suffered "actual damages," loss of "goodwill," and "injury to reputation."  If Plaintiffs did not want to subject ADT US Holdings, Inc. to financial discovery, they should not have alleged that it was damaged.  Unless and until ADT US Holdings, Inc. dismisses itself from this case, it is subject to the requirements of Rules 26 and 34.

III.    <u>**REQUEST NO. 6**</u>

**Request:**

> The purchase and sale agreement or similar document (including, but not limited to, all representations, warranties, and disclosures of assets and liabilities) between Apollo Global Management and ADT.

**Response:**

> ADT objects to this request as seeking information that is irrelevant to the claims and defenses at issue in this case. This case is about Defendant's deceptive and improper sales practices. The purchase and sale agreement or similar document between Apollo Global Management and ADT is not at issue and does not relate to whether Defendants' used deceptive sales tactics with ADT's customers. Accordingly, the document(s) sought in Request No. 7 are not relevant to any claim or defense asserted in this case.

**Reasons Assigned as Supporting the Motion:**

Plaintiffs have asserted a relevance objection.  In doing so, Plaintiffs shift the focus by claiming that this case is solely about Vivint's sales practices.  That is not true.  Plaintiffs divert attention away from the fact that their case also purports that the value of customer accounts is a factor in this case.  In fact, in the Initial Disclosures, Plaintiffs state that the "relevant documents and things" in this case include documents concerning the "value of lost accounts."  (Initial Disclosures at p. 5.)

To drive this point home, it should be noted that, with respect to corporate consolidation in the security industry, one of the major factors is the parties taking into consideration the value of assumed accounts subject to the transaction.  Indeed, Plaintiffs have now proffered an expert on "mergers, acquisitions, asset purchases and sales among the companies within the alarm security Industry," who is specifically opining on the issue of the value of customer accounts which are subject to customer account purchases in the industry.  Astonishingly, the expert purports that he has "reviewed the terms of the acquisition of ADT by an affiliate of Apollo Global Management" for purposes of his analysis.  How Plaintiffs can assert that discovery on that exact issue is "not

relevant" is mind-boggling.  Plaintiffs should not be permitted to exploit an issue to use offensively

in this case, while denying the opposing party discovery on the same issue.[7]

## IV.    REQUEST NO. 7

**Request:**

> The purchase and sale agreement or similar document (including, but not limited
> to, all representations, warranties, and disclosures of assets and liabilities) between
> Protection One and ADT.

**Response:**

> ADT objects to this request as seeking information that is irrelevant to the claims
> and defenses at issue in this case. This case is about Defendant's deceptive and
> improper sales practices. The purchase and sale agreement or similar document
> between Protection One and ADT is not at issue and does not relate to whether
> Defendants' used deceptive sales tactics with ADT's customers. Accordingly, the
> document(s) sought in Request No. 7 are not relevant to any claim or defense
> asserted in this case.

**Reasons Assigned as Supporting the Motion:**

> The same reasons why Plaintiffs should be compelled to produce the documents responsive

to Request No. 6 apply to Request No. 7.

## V.    REQUEST NO. 8[8]

**Request:**

> All documents referring to, memorializing, supporting or evidencing any damages
> or losses incurred by ADT as alleged by ADT in paragraphs 88, 97, 107, and 114
> of the Complaint.

**Response:**

---

[7]    When confronted with this, Plaintiffs' counsel suggested that Plaintiffs would consider producing the materials upon which their experts relied.  However, this would be unfair to Vivint, given what is at stake, as Plaintiffs should not be permitted to cherry-pick limited information on that subject matter and withhold that which might help Vivint in its defense.

[8]    As to Request Nos. 8, 9, 10, 11, 14, and 16, Plaintiffs have indicated that they would confirm whether Plaintiffs are withholding materials responsive to these requests.  To date, Plaintiffs have not provided any confirmation to Vivint.  Plaintiffs were supposed to have done this in their original response pursuant to Rule 34(b)(2)(C).

ADT objects to producing any drafts of expert reports, which are protected under F.R.C.P. 26(b)(4)(B). Upon entry of a protective order, ADT will be producing documents relating to ADT customers who were subjected to deceptive or improper sales practices by Defendant, including those ADT customers who were deceived into switching alarm services providers, and evidencing damages or losses as a result. Further, pursuant to F.R.C.P. 26(a)(2) and this court's scheduling order, ADT anticipates that it will be producing expert reports supporting damages or losses incurred by ADT as result of the Customers' cancellations and reinstallations, as well as lost revenue due to Defendant's false representations of affiliation with ADT.

**Reasons Assigned as Supporting the Motion:**

Plaintiffs' response to Request No. 8 is a prime example of the evasive nature by which Plaintiffs respond to individual discovery requests. Plaintiffs first inject the issue of expert reports to their response, as if to suggest that Plaintiffs were not ready to produce discovery regarding their alleged damages until they have produced an expert report. Rather than directly state whether Plaintiffs will (or will not) produce the precise documents being requested (as required by Rule 34), Plaintiffs then re-couch the request as referring to certain "ADT customers." Re-phrasing a document request to one's liking is not compliance with the Rule.[9]

The constant emphasis on forthcoming expert reports is a diversionary tactic. By way of example, Paragraph 88 of the Complaint (which is a subject matter of this request) alleges as follows:

ADT has been and will continue to be damaged as a result of Vivint's false representations by the confusion of the market for ADT's goods and services, by the disruption of ADT's relationships with its customers, by the diversion of ADT's customers to Vivint, by ADT's lost royalties, by ADT's loss of control of the use of its brand in the market, and by damage to ADT's goodwill and reputation as a reliable provider of security systems.

---

[9]     A compliant response would be something along the lines of: "Upon entry of a protective order, ADT will be producing all documents requested by Request No. 8, other than draft expert reports." The fact that Plaintiffs give the request a meandering re-casting tells the reader nothing as to what is ultimately going to be produced. If anything, it tells the reader that the responding party is trying to obfuscate the issue.

Plaintiffs had the wherewithal to make this factual allegation in a federal court pleading.  They allege that they have already been damaged.  They do not need to wait for experts to draft final reports before they can produce responsive documents.  Even then, now that Vivint has received Plaintiffs' expert reports, it appears that Plaintiffs intend to assert some of their damages theories without the use of an expert (*i.e.*, it appears that they may be intending to put on ***factual*** evidence to attempt to proceed with those claims).  Vivint is entitled to financial and damages discovery even if Plaintiffs do not intend to employ an expert to opine on certain of the damages components.

Further, the response's parting reference to "lost revenue" (prefaced with an "as well as") is noteworthy, which Plaintiffs slipped into their description into what their expert report will contain.  Curiously, Plaintiffs do not represent that they will be producing the documents and material regarding "lost revenue" in the context of non-expert discovery.  This also appears to be a tell-tale sign that a potential ambush is on the horizon.

## VI.    REQUEST NO. 9

**Request:**

> All documents referring to, memorializing, supporting or evidencing ADT's claims that it has incurred "no less than $20,000,000" in compensatory damages. *See* Complaint at ¶ 90(b), 99(b), 108(b), 114(a).

**Response:**

> ADT objects to producing any drafts of expert reports, which are protected under F.R.C.P. 26(b)(4)(B). Upon entry of a protective order, ADT will be producing documents relating to ADT customers who were subjected to deceptive or improper sales practices by Defendant, including those ADT customers who were deceived into switching alarm services providers, and evidencing damages or losses as a result. Further, pursuant to F.R.C.P. 26(a)(2) and this court's scheduling order, ADT anticipates that it will be producing expert reports supporting damages or losses incurred by ADT as result of the Customers' cancellations and reinstallations, as well as lost revenue due to Defendant's false representations of affiliation with ADT.

**Reasons Assigned as Supporting the Motion:**

Plaintiffs' response to Request No. 9 follows the same pattern: invoking expert reports and then re-casting the request in a manner other than in which it was originally phrased, while not complying with Rule 34 requirement to clearly articulate what is being produced and whether anything is being withheld based on an objection (including material on any alleged "lost revenue"). For that reason, the production of all of the requested material should be compelled.

## VII.   REQUEST NO. 10

**Request:**

> All documents referring to, memorializing, supporting or evidencing any actual damages or losses alleged to have been sustained by ADT due to Vivint's alleged conduct.

**Response:**

> ADT objects to producing any drafts of expert reports, which are protected under F.R.C.P. 26(b)(4)(B). Upon entry of a protective order, ADT will be producing documents relating to entry of a protective order, ADT will be producing documents relating to ADT customers who were subjected to deceptive or improper sales practices by Defendant, including those ADT customers who were deceived into switching alarm services providers, and evidencing damages or losses as a result. Further, pursuant to F.R.C.P. 26(a)(2) and this court's scheduling order, ADT anticipates that it will be producing expert reports supporting damages or losses incurred by ADT as result of the Customers' cancellations and reinstallations, as well as lost revenue due to Defendant's false representations of affiliation with ADT.

**Reasons Assigned as Supporting the Motion:**

Plaintiffs' response to Request No. 10 follows the same pattern: invoking expert reports and then re-casting the request in a manner other than in which it was originally phrased, while not complying with Rule 34 requirement to clearly articulate what is being produced and whether anything is being withheld based on an objection (including material on any alleged "lost revenue"). For that reason, the production of all of the requested material should be compelled.

## VIII.   REQUEST NO. 11

**Request:**

> All documents referring to, memorializing, supporting or evidencing any special damages or losses alleged to have been sustained by ADT due to Vivint's alleged conduct.

**Response:**

> ADT objects to producing any drafts of expert reports, which are protected under F.R.C.P. 26(b)(4)(B). Upon entry of a protective order, ADT will be producing documents relating to ADT customers who were subjected to deceptive or improper sales practices by Defendant, including those ADT customers who were deceived into switching alarm services providers, and evidencing damages or losses as a result. Further, pursuant to F.R.C.P. 26(a)(2) and this court's scheduling order, ADT anticipates that it will be producing expert reports supporting damages or losses incurred by ADT as result of the Customers' cancellations and reinstallations, as well as lost revenue due to Defendant's false representations of affiliation with ADT.

**Reasons Assigned as Supporting the Motion:**

Plaintiffs' response to Request No. 11 follows the same pattern:  invoking expert reports and then re-casting the request in a manner other than in which it was originally phrased, while not complying with Rule 34 requirement to clearly articulate what is being produced and whether anything is being withheld based on an objection (including material on any alleged "lost revenue").  For that reason, the production of all of the requested material should be compelled.

## IX.   REQUEST NO. 14

**Request:**

> All documents referring to, memorializing, supporting or evidencing ADT's assertion at page 8 of its Initial Disclosures that "the value to ADT of a lost account will be in the range of $2,132.00 to $2,288.00."

**Response:**

> ADT objects to producing any drafts of expert reports, which are protected under F.R.C.P. 26(b)(4)(B). However, pursuant to F.R.C.P. 26(a)(2) and this court's scheduling order, ADT anticipates that it will be producing an expert report supporting its contention as to the value of a lost account.

**Reasons Assigned as Supporting the Motion:**

Plaintiffs should not be permitted to hide behind an assertion that they need not comply with fact discovery obligations until they have provided an expert report.  Beyond an expert report, Vivint is entitled to the production of material regarding the underlying *evidence* that Plaintiffs possess regarding this contention.

## X.    REQUEST NO. 16

**Request:**

> All documents referring to, memorializing, supporting or evidencing ADT's assertion at page 9 of its Initial Disclosures that Vivint's agents injured ADT "by eroding its goodwill and reputation with its customers, and by eroding ADT's control over its brand in the market."

**Response:**

> Upon entry of a protective order, ADT will produce documents concerning or related to the deceptive practices by Vivint sales agents that ADT believes was injurious to its goodwill and reputation with its customers. Further, ADT incorporates by reference its response to Request No. 3.

**Reasons Assigned as Supporting the Motion:**

This response is evasive.  As explained above with respect to Request No. 1, financial discovery is critical when there has been an allegation of injury to "goodwill" or "reputation."

A close reading reveals that Plaintiffs never unequivocally represent in their response that they will produce documents concerning the alleged injury to goodwill or reputation.  They merely state that they will produce documents concerning alleged deceptive practices.  That is not what the request asked.  It asked for "documents referring to, memorializing, supporting or evidencing . . . that Vivint's agents *injured* ADT "*by eroding its goodwill and reputation* with its customers, and by eroding ADT's control over its brand in the market" (emphasis added).  This request is not limited to the alleged acts themselves.  By not articulating what Plaintiffs are withholding as a result of their re-phrasing of the request, Plaintiffs are violating Rule 34 again.

Finally, Plaintiffs' incorporation of the "response to Request No. 3" is non-sensical.  That request deals with SEC filings, as to which Plaintiffs objected by contending that Vivint can obtain those documents in the public record.  Contrary to that response, Vivint would have no means of discerning what material in the public record concerns Plaintiffs' alleged injury to goodwill or reputation.

## Conclusion

For the foregoing reasons, this Motion to Compel should be granted, and Plaintiffs should be ordered to produce all of the requested documents.

## Certificate of Good Faith Conference

Pursuant to Local Rule 7.1(a)(3), on July 10-11, 2017, counsel for Vivint, Lawrence D. Silverman and Sandra J. Millor conferred by telephone with Plaintiffs' counsel, Dan Rohner, regarding the relief requested herein.  Counsel for the parties continued the dialogue during the weeks of July 16, 2017 and July 24, 2017, in a further effort to resolve the issues.[10]  Ultimately, counsel were unable to resolve all of the issues between the parties.  Plaintiffs' counsel advised that Plaintiffs oppose the relief requested herein.

## Request for Hearing

Vivint submits that oral argument on this motion would be helpful to the Court given the nature of the objections and complexity of some of the issues.  For example, a hearing may give the Court a further insight into the nature of documents created and maintained by companies in the security industry (and context as to why Vivint critically needs them) and provide the Court an opportunity to have answered any questions the Court might have with respect to these issues.

---

[10]     Pursuant to S.D. Fla. L.R. 26.1(g)(1), the parties stipulated, confirmed in writing, to extend the time to complete their good faith conferencing by four additional days.

Vivint believes that 30 minutes would be sufficient for argument on the issues.

Respectfully submitted,

  */s/ Lawrence D. Silverman*
Lawrence D. Silverman (FBN 7160)
Email:  lawrence.silverman@akerman.com
Sandra J. Millor (FBN 13742)
Email:  sandra.millor@akerman.com
AKERMAN LLP
Three Brickell City Centre
98 Southeast Seventh Street, Suite 1100
Miami, FL  33131
Phone:  (305) 374-5600
Fax:  (305) 374-5095

*-and-*

David S. Wood (FBN 289515)
Email:  david.wood@akerman.com
AKERMAN LLP
Post Office Box 231
Orlando, FL  32802-0231
Phone: (407) 423-4000
Fax: (407) 843-6610

*-and-*

E. Dylan Rivers (FBN 0669555)
Email: drivers@ausley.com
Martin B. Sipple (FBN 0135399)
Email: msipple@ausley.com
Anthony L. Bajoczky, Jr. (FBN 96631)
Email: tbajoczky@ausley.com
AUSLEY MCMULLEN
Post Office Box 391
123 South Calhoun Street (32301)
Tallahassee, FL 32302
Phone: (850) 224-9115
Fax: (850) 222-7560

*-and-*

Matthew A. Steward (*admitted pro hac vice*)
Email: mas@clydesnow.com
CLYDE SNOW

201 South Main Street, Suite 1300
Salt Lake City, Utah 84111
Phone: (801) 322-2516
Fax: (801) 521-6280

*Counsel for Defendant, VIVINT, INC.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 28th day of July, 2017, a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system, which will send an electronic notice to all counsel of record.

*/s/Lawrence D. Silverman*
Lawrence D. Silverman

**<u>SERVICE LIST</u>**

C. Sanders McNew
McNew P.A.
2385 NW Executive Center Drive, Suite 100
Boca Raton, Florida 33431
Tel: (561) 299-0257
Fax: (561) 299-3705
Email: mcnew@mcnew.net

Richard G. Sander (admitted *pro hac vice*)
S. Kirk Ingebretsen (admitted *pro hac vice*)
Daniel E. Rohner (admitted *pro hac vice*)
Eric J. Hobbs (admitted *pro hac vice*)
Shook, Hardy & Bacon LLP
1660 17th Street, Suite 450
Denver, Colorado 80202
Tel: (303) 285-5300
Email: rsander@shb.com
Email: kingebretsen@shb.com
Email: drohner@shb.com
Email: ehobbs@shb.com

Charles C. Eblen (admitted *pro hac vice*)
Shook, Hardy & Bacon, LLP
2555 Grand Boulevard
Kansas City, MO 64108
Tel: (816) 474-6550
Email: ceblen@shb.com