UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO: 17-cv-80432-MIDDLEBROOKS

ADT LLC, and ADT US HOLDINGS, INC.,

    Plaintiffs,

v.

VIVINT, INC.,

    Defendant.

_____/

## ORDER DENYING IN PART AND GRANTING IN PART MOTION TO DISMISS

THIS CAUSE comes before the Court upon Defendant Vivint, Inc.'s ("Vivint") Motion to Dismiss ("Motion"), filed on May 5, 2017. (DE 19). Plaintiffs ADT LLC and ADT US Holdings, Inc. (together, "ADT") filed a response on May 16, 2017 (DE 19), to which Vivint replied on May 23, 2017 (DE 32). For reasons stated below, Vivint's Motion is granted in part and denied in part.

**I.    BACKGROUND**

According to the Complaint, ADT US Holdings, Inc., a Delaware corporation with its principal place of business in Florida, is a holding company that owns various trademarks, featuring the letters "ADT," which are registered with the United States Patent and Trademark Office (the "ADT Trademarks"). (Complaint ("Compl."), DE 1 ¶¶ 2, 10). ADT LLC, a limited liability company whose sole member is ADT US Holdings, Inc., runs a residential alarm systems business in the United States, for which it licenses the ADT Trademarks from ADT US Holdings, Inc. (Compl. ¶ 3). Vivint, a Utah corporation with its principal place of business in Utah, runs a competing residential alarm systems business. (Compl. ¶¶ 1, 4).

The Complaint alleges that, from the summer of 2013 through 2016, ADT received 905 customer complaints, reporting deceptive sales practices by Vivint's agents.[1] (Compl. ¶¶ 26-30). Specifically, ADT's customers reported that Vivint's sales agents visited their homes and used sales pitches that were intended to mislead ADT's customers into believing that Vivint's sales agents were associated with ADT in some manner. (Compl. ¶¶ 15-17, 96). These deceptive sales pitches caused customer confusion as to whether Vivint's agents were associated with ADT, allowing Vivint's sales agents to convince ADT's customers to enter contracts with Vivint and to terminate their contracts with ADT. (Compl. ¶¶ 19, 79-80). Some customers entered contracts with Vivint because they believed that Vivint was associated with ADT, while others entered Vivint contracts based on Vivint's false representations that ADT was out of business, had been acquired, was providing unsecure systems, or had provided their private data to Vivint. (Compl. ¶¶ 21-22). ADT alleges that Vivint's false and deceptive representations caused ADT to lose customer accounts, royalties, and control over ADT's brand, and have damaged ADT's good will and reputation. (Comp. ¶¶ 88, 97, 107, 114).

On April 4, 2017, ADT filed the instant Complaint, alleging (1) trademark infringement in violation of 15 U.S.C. § 1125(a) of the Lanham Act ("Count I"), (2) unfair competition in violation of Florida common law ("Count II"), (3) unfair and deceptive acts in violation of Fla. Stat. § 501.204, Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") ("Count III"), and (4) trade slander, also known as commercial disparagement, in violation of Florida common law ("Count IV"). (DE 1). Vivint moves to dismiss Counts I, II, IV, and ADT's claim for monetary relief under Count III.

---

[1] The Complaint details 44 incidents that occurred in 2013 and 2014. (Compl. ¶¶ 33-76).

2

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a complaint. *See* Fed. R. Civ. P. 12(b)(6). In assessing the legal sufficiency of a complaint's allegations, the Court is bound to apply the pleading standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That is, the complaint "must . . . contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570). "Dismissal is therefore permitted when on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006) (internal quotations omitted) (citing *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993)).

When reviewing a motion to dismiss, a court must construe plaintiff's complaint in the light most favorable to plaintiff and take the factual allegations stated therein as true. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). However, pleadings that "are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 678; *see also Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (stating that an unwarranted deduction of fact is not considered true for purpose of determining whether a claim is legally sufficient).

Generally, a plaintiff is not required to detail all the facts upon which he bases his claim. Fed. R. Civ. P. 8(a)(2). Rather, Rule 8(a)(2) requires a short and plain statement of the claim that fairly notifies the defendant of both the claim and the supporting grounds. *Twombly*, 550 U.S. at 555-56. However, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of

entitlement to relief." *Id.* at 556 n.3. Plaintiff's "obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citation omitted). "Factual allegations must be enough to raise [plaintiff's] right to relief above the speculative level, on the assumption that all of the allegations in the complaint are true." *Id.*

### III. DISCUSSION

#### A. Count I – Trademark Infringement

ADT alleges that Vivint infringed the ADT Trademarks when Vivint's sales agents falsely represented that they were associated with ADT. Vivint argues that because ADT alleges that Vivint made misrepresentations in the context of commercial advertising and promotion, ADT asserts a false advertising claim under § 1125(a)(1)(B). Vivint then argues that ADT fails to state a false advertising claim because ADT does not allege that Vivint's agents made the allegedly false statements as part of an "organized campaign." ADT counters that it asserts a false association claim under § 1125(a)(1)(A), rather than a false advertising claim under § 1125(a)(1)(B).

Section 1125(a)(1) states:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

    (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

    (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

4

15 U.S.C. § 1125(a)(1).

"Section 1125(a) [] creates two distinct bases of liability: false association, § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B)." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1384 (2014) (citing *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1108 (9th Cir. 1992)). The "drafters wrote the purposes of the Lanham Act, two of which are relevant here, into the statute itself: to make 'actionable the deceptive and misleading use of marks in . . . commerce' and 'to protect persons engaged in . . . commerce against unfair competition.'" *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1108 (9th Cir. 1992), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014) (citing 15 U.S.C. § 1127 (1988)). Section 1125(a) "reflects both of these purposes, providing two bases of liability: (1) false representations concerning the origin, association, or endorsement of goods or services through the wrongful use of another's distinctive mark, name, trade dress, or other device ('false association'), and (2) false representations in advertising concerning the qualities of goods or services ('false advertising')." *Id.* at 1108-09 (citing 2 J. Thomas McCarthy, *Trademarks and Unfair Competition* §§ 27:2-27:4, at 344-68 (2d ed. 1984); *U-Haul Int'l, Inc. v. Jartran, Inc.*, 681 F.2d 1159, 1160 (9th Cir.1982); *Spring Mills, Inc. v. Ultracashmere House, Ltd.*, 532 F. Supp. 1203, 1220 (S.D.N.Y), *rev'd on other grounds*, 689 F.2d 1127 (2d Cir. 1982)).

Specifically, in order to prevail on a federal claim under § 1125(a)(1)(A), "a trademark owner 'must show (1) that it had trademark rights in the mark or name at issue and (2) that the other party had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two.'"[2] *Florida Int'l Univ. Bd. of Trustees v. Florida Nat'l*

---

[2] In evaluating whether consumers are likely to confuse the two marks, the Eleventh Circuit "applies a multifactor test, evaluating the following seven factors: (1) strength of the mark alleged to have been infringed; (2) similarity of the infringed and infringing marks; (3) similarity between the goods and services offered under the two marks; (4) similarity of the actual sales methods used by the holders of the marks, such as their sales outlets and customer base; (5) similarity of

*Univ., Inc.*, 830 F.3d 1242, 1265 (11th Cir. 2016) (quoting *Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1346 (11th Cir. 2012)). In contrast, "[i]n order to establish that a third party engaged in false advertising, the plaintiff 'must plead [] an injury to a commercial interest in sales or business reputation proximately caused by the . . . misrepresentations.'" *Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*, 797 F.3d 1248, 1277 (11th Cir. 2015) (quoting *Lexmark Int'l, Inc.*, 134 S. Ct. at 1395). "To prove that the third party's statements caused the requisite injury, [the Eleventh Circuit] ha[s] held that the plaintiff must show: (1) the . . . statements were false or misleading; (2) the statements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on the consumers' purchasing decision; (4) the misrepresented service affects interstate commerce; and (5) [the plaintiff] has been, or likely will be, injured as a result of the false or misleading statement." *Id.* (citation omitted).

In contrast to a false advertising claim for disparagement of a competitor's product, ADT's claim against Vivint alleges consumer confusion with ADT resulting from the use of the ADT Trademarks. Specifically, ADT alleges that it owns registered trademarks in the ADT Trademarks, and that Vivint's sales agents used the ADT Trademarks when they falsely represented to ADT's customers that they were associated with ADT. (Compl. ¶¶ 2, 15-17, 96). ADT further alleges that Vivint's representations were likely to cause confusion because: (1) the ADT Trademarks are well-known, as ADT is the "best-known provider of electronic security services and equipment for homes and business in the United States," (2) ADT and Vivint both offer residential security systems through the same marketing channels, including door-to-door sales, (3) Vivint misrepresented its association with ADT in order to induce ADT customers to grant Vivint's agents access to their homes and to win their trust, and (4) the misrepresentations caused actual confusion

---

advertising methods; (6) intent of the alleged infringer to misappropriate the proprietor's good will; and (7) the existence and extent of actual confusion in the consuming public." *Tana v. Dantanna's*, 611 F.3d 767, 774-75 (11th Cir. 2010).

6

among ADT's customers as to the agents' association with ADT. (Compl. ¶¶ 8, 14, 15-18, 22). Finally, ADT asserts that it is "likely to be damaged," and has been damaged, by Vivint's misrepresentations in the form of lost customer accounts, lost royalties, loss of control over its brand, and damage to its good will and reputation. (Comp. ¶ 88). Accordingly, ADT has sufficiently alleged a cause of action for a violation of § 1125(a)(1)(A) based on a theory of false association.[3] Vivint's Motion to Dismiss Count I is denied.[4]

### B. Count II – Unfair Competition

Vivint argues that ADT's common law unfair competition claim fails for the same reason that its federal trademark infringement claim fails.

"'The law of unfair competition is the umbrella for all statutory and nonstatutory causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial matters.'" *Alphamed Pharm. Corp. v. Arriva Pharm., Inc.*, 432 F. Supp. 2d 1319, 1353 (S.D. Fla. 2006), *aff'd*, 294 F. App'x 501 (11th Cir. 2008) (citing *Am. Heritage Life Ins. Co. v. Heritage Life Ins. Co.*, 494 F.2d 3, 14 (5th Cir. 1974)[5]). "Courts endeavoring to map the contours of Florida's elastic unfair competition cause of action 'have recognized that the precise elements of the claim are somewhat elusive.'" *Id.* (citations omitted). "In the absence of elements that apply uniformly to all claims of unfair competition, the Eleventh Circuit has endorsed an approach which applies elements appropriate to the underlying acts of the unfair competition claim on a case by case basis." *Id.*

---

[3] Because ADT expressly disclaimed its intent to pursue a false advertising claim, ADT may not proceed under Count I on a theory that Vivint's agents caused ADT injury by disparaging ADT's services.

[4] Because I find that ADT has alleged a cause of action, I need not address ADT's argument that Vivint should be judicially estopped from moving to dismiss ADT's trademark claim because Vivint has asserted a similar claim in other litigation.

[5] The Eleventh Circuit has recognized the case law of the former Fifth Circuit prior to October 1, 1981 as its governing body of precedent. *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981).

Trademark infringement is one type of underlying act upon which an unfair competition claim may be based, *id.*, and in such a case, the common law unfair competition claim "rise[s] or fall[s] with its federal trademark infringement . . . claim." *See Florida Int'l*, 830 F.3d at 1267. Accordingly, because ADT has stated a claim for federal trademark infringement under Count I, Vivint's Motion to Dismiss Count II on the grounds that ADT's trademark infringement claim fails is denied.[6]

### C. Count III – FDUTPA

Vivint moves to dismiss ADT's FDUPTA claim for damages based on (1) ADT's lack of statutory standing, and (2) ADT's failure to allege "actual damages" as defined by the statute.[7]

#### i. Standing

Vivint argues that only consumers may seek damages under FDUTPA. Vivint acknowledges a split of authority on this issue, but argues that the Court should follow those cases that limit FDUTPA actions for monetary relief to consumers because FDUTPA's legislative history and the statute as a whole emphasize FDUTPA's consumer protection purpose.

In 2001, Florida's legislature amended § 501.211(2), which authorizes a cause of action for damages under FDUTPA, replacing "consumer" with "person." The provision now reads: "In any individual action *brought by a person* who has suffered a loss as a result of a violation of this part, *such person* may recover actual damages, plus attorney's fees and court costs . . . ." *See* Fla. Stat. § 501.211(2). Based on the "well-established presumption that the legislature intends to change the law when it amends a statute," one line of cases has held that "[t]his change indicates that the

---

[6] Because I find that ADT has alleged a cause of action, I need not address ADT's argument that Vivint should be judicially estopped from moving to dismiss ADT's unfair competition claim because Vivint has asserted a similar claim in other litigation.

[7] Vivint does not assert any grounds for challenging ADT's claim for injunctive relief under FDUTPA. Although Vivint observes in a footnote that "it is unclear whether [FDUTPA] applies" to any incidents outside of Florida, Vivint does not move to dismiss on these grounds, and the Parties have not briefed this issue.

legislature no longer intended FDUTPA to apply to only consumers, but to other entities able to prove the remaining elements of the claim as well." *See Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cty., Inc.*, 169 So. 3d 164, 169 (Fla. 4th DCA 2015). Although Vivint argues that this line of cases is at odds with the consumer protection purpose of FDUPTA, the court in *Carribean Cruise* observed that the consumer protection purpose is preserved despite the extension of standing to non-consumers because to prove an unfair or deceptive practice, a plaintiff must still prove "an injury or detriment to consumers." *Id.*

Accordingly, at this stage, the Court follows the line of cases that extends a FDUTPA cause of action for damages to non-consumers, and denies Vivint's Motion to Dismiss based on a lack of statutory standing.

### ii. Actual Damages

Next, Vivint argues that ADT's alleged damages, in the form of lost customer accounts, are consequential damages that are not cognizable under FDUTPA. ADT responds that lost customer accounts represent the "actual loss of an asset, not a consequential loss." (DE 29 at 11).

A claim for damages under § 501.211(2) has three elements: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Caribbean Cruise Line*, 169 So. 3d at 167. "'[A]ctual damages' under FDUTPA is a term of art . . . ." *Eclipse Med., Inc. v. Am. Hydro-Surgical Instruments, Inc.*, 262 F. Supp. 2d 1334, 1357 (S.D. Fla. 1999), *aff'd sub nom. Eclipse Med., Inc. v. Am. Hydro-Surgical*, 235 F.3d 1344 (11th Cir. 2000). "In the context of FDUTPA, 'actual damages' are defined as 'the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties.'" *Rodriguez v. Recovery Performance & Marine, LLC*, 38 So. 3d 178, 180 (Fla. 3d DCA 2010) (citing *Rollins, Inc. v. Heller*, 454 So. 2d 580, 585 (Fla. 3d DCA 1984); *Urling v. Helms Exterminators, Inc.*, 468 So. 2d 451, 454 (Fla. 1st DCA

9

1985)). "This is because 'the act is intended to protect a consumer from unfair or deceptive acts or practices which diminish the value or worth of the goods or services purchased by the consumer.'" *Rodriguez*, 38 So. 3d at 180 (citing *Urling,* 468 So. 2d at 454).

Furthermore, Florida courts hold that, "under FDUTPA, the term 'actual damages' does not include special or consequential damages." *See id.* (citing *Smith v. 2001 S. Dixie Highway, Inc.,* 872 So. 2d 992, 994 (Fla. 4th DCA 2004)); *Orkin Exterminating Co. v. DelGuidice,* 790 So. 2d 1158, 1162 (Fla. 5th DCA 2001); *Urling,* 468 So. 2d at 454; *Fort Lauderdale Lincoln Mercury, Inc. v. Corgnati,* 715 So. 2d 311 (Fla. 4th DCA 1998)); *see also Dorestin v. Hollywood Imports, Inc.*, 45 So. 3d 819 (Fla. 4th DCA 2010) ("Proof of actual damages is necessary to sustain a FDUTPA claim. The statute does not allow the recovery of other damages, such as consequential damages."). Accordingly, lost profits, the "quintessential example of consequential damages," are not permitted. *See Nyquist v. Randall*, 819 F.2d 1014, 1017 (11th Cir. 1987); *see also Five for Entm't S.A. v. Rodriguez*, 877 F. Supp. 2d 1321, 1331 (S.D. Fla. 2012); *Siever v. BWGaskets, Inc.*, 669 F. Supp. 2d 1286, 1294 (M.D. Fla. 2009); *Eclipse Med.*, 262 F. Supp. 2d at 1357.

ADT has failed to allege a difference in the market value of a product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties. Furthermore, while ADT argues that customer accounts are assets because customers "pay monthly subscription fees to ADT" in return for its services, the difference between lost future monthly payments for services and lost profits is unclear. Because ADT fails to allege actual damages under FDUPTA, Vivint's Motion to Dismiss ADT's claim for monetary damages under Count III is granted. Count III may proceed as to ADT's claim for injunctive relief.

**D. Count IV – Trade Slander/Commercial Disparagement**

Vivint argues that the 44 specific instances of trade slander, alleged in the Complaint, are barred by the two-year statute of limitations, and that ADT's remaining allegations are too general to plead special damages. ADT counters that the Court should apply Florida's four-year statute of limitations for "injuring personal property," "malicious interference," "any other intentional tort," or "any action not specifically provided for in these statutes," instead of its two-year statute of limitations for slander, because trade slander is fundamentally different from slander, in that the former protects a party's property interests, and the latter, a party's reputation. ADT asserts that the 44 specific incidents in the Complaint satisfy the particularity requirement for pleading special damages, but requests leave to amend its Complaint to plead incidents after April 4, 2015 if the Court determines that a two-year statute of limitations applies to trade slander.

As to the applicable statute of limitations, multiple Florida courts have held that "the Statute of Limitations applicable to libel and slander is equally applicable to actions for slander of title."[8] *Old Plantation Corp. v. Maule Indus., Inc.*, 68 So. 2d 180, 182 (Fla. 1953); *see also Carey v. Beyer*, 75 So. 2d 217, 217 (Fla. 1954); *Sailboat Key, Inc. v. Gardner*, 378 So. 2d 47, 48 (Fla. 3d DCA 1979). Under Florida law, the statute of limitations applicable to libel and slander is two years. *See* Fla. Stat. § 95.11(4)(g). For slander and libel causes of action, the statute of limitations begins to run at the time of publication. *See* Fla. Stat. § 770.07 ("The cause of action for damages founded upon a single publication or exhibition or utterance, as described in s. 770.05, shall be deemed to

---

[8] "Slander of title" is another name for trade slander. *See Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So. 2d 381, 386 (Fla. 4th DCA 1999) ("A group of torts recognized under the collective title of 'injurious falsehood' are often interchangeably called slander of title, disparagement of property, or trade libel . . . . The gist of the tort of injurious falsehood is the 'intentional interference with another's economic relations.'"); *see also Kilgore Ace Hardware, Inc. v. Newsome*, 352 So. 2d 918, 920 (Fla. 2d DCA 1977) ("With respect to the trade libel or slander count, it is now well recognized that a person, and a corporation as well, may recover damages for injuries suffered because of written or oral publication of false defamatory matter which tends to be prejudicial in the conduct of a trade or business or to deter third persons from dealing in business with him.").

have accrued at the time of the first publication or exhibition or utterance thereof in this state."); *see also Wagner, Nugent, Johnson, Roth, Romano, Erikson & Kupfer, P.A. v. Flanagan*, 629 So. 2d 113, 115 (Fla. 1993) (holding action for libel or slander accrues upon publication). Accordingly, all statements published more than two years before the Complaint was filed on April 4, 2017 are time-barred, and ADT's cause of action for trade slander based on these incidents is dismissed with prejudice.

As to the incidents that occurred after April 4, 2015, "[i]n a disparagement action the plaintiff must allege and prove the following elements: (1) [a] falsehood (2) has been published, or communicated to a third person (3) when the defendant-publisher knows or reasonably should know that it will likely result in inducing others not to deal with the plaintiff and (4) in fact, the falsehood does play a material and substantial part in inducing others not to deal with the plaintiff[,] and (5) special damages are proximately caused as a result of the published falsehood." *Bothmann v. Harrington*, 458 So. 2d 1163, 1168 (Fla. 3d DCA 1984). "Special damages are actual, out of pocket losses which must be proven by specific evidence as to the time, cause and amount . . . ." *Falic v. Legg Mason Wood Walker, Inc.*, 347 F. Supp. 2d 1260, 1268 (S.D. Fla. 2004) (citing *Continental Cas. Co. v. Southwestern Bell Tel. Co.*, 860 F.2d 970, 976 (10th Cir. 1988); *see also Bothmann*, 458 So. 2d at 1170.

ADT does not argue that its general allegations as to incidents that occurred after April 4, 2015 satisfy the particularity requirement for pleading special damages, and asks for leave to amend the Complaint, to the extent the Court determines that the 44 specific incidents pled in the Complaint are time-barred. Accordingly, because ADT does not plead special damages for incidents that occurred after April 4, 2015, ADT's trade slander claim, as to these incidents, is dismissed without prejudice. It is hereby

**ORDERED AND ADJUDGED** that:

(1) Defendant's Motion to Dismiss (DE 19) is **GRANTED IN PART and DENIED IN PART.**

(2) ADT's claim for monetary damages pursuant to Count III, and its claim for trade slander pursuant to Count IV, as to those incidents that occurred on or before April 4, 2015, are **DISMISSED WITH PREJUDICE.**

(3) ADT's claim for trade slander pursuant to Count IV, as to those incidents that occurred after April 4, 2015, is **DISMISSED WITHOUT PREJUDICE.**

(4) ADT must file any amended Complaint by **August 16, 2017**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida, this __3__ day of August, 2017.

_____
DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

Copies to:     Counsel of Record