UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
PALM BEACH DIVISION

No. 9:17-cv-80432-Middlebrooks/Brannon


ADT LLC and ADT US HOLDINGS, INC.,

      Plaintiffs,

          v.

VIVINT, INC.,

      Defendant.

_____/


**ADT'S MOTION FOR SUMMARY JUDGMENT
<u>AS TO LIABILITY AND EQUITABLE RELIEF</u>**

**SHOOK, HARDY & BACON LLP**

Richard G. Sander (*pro hac vice*)
rsander@shb.com
S. Kirk Ingebretsen (*pro hac vice*)
kingebretsen@shb.com
Daniel Rohner (*pro hac vice*)
drohner@shb.com
1660 17th Street, Suite 450
Denver, Colorado  80202
Tel:  (303) 285-5300

Charles C. Eblen (*pro hac vice*)
ceblen@shb.com
Jason R. Scott (*pro hac vice*)
jscott@shb.com
SHOOK, HARDY & BACON LLP
2555 Grand Boulevard
Kansas City, Missouri  64108
Tel:  (816) 474-6550

**McNEW P.A.**

C. Sanders McNew
Florida Bar No. 0090561
mcnew@mcnew.net
2385 NW Executive Center Drive
Suite 100
Boca Raton, Florida  33431
Tel:  (561) 299-0257

# TABLE OF CONTENTS

INTRODUCTION                                                                    **1**

FACTS                                                                           **2**

ARGUMENT                                                                        **2**

I.      **ADT Is Entitled To Judgment On Count One Because Defendants Created A
        Likelihood Of Confusion In Violation Of Section 43(a) Of The Lanham Act.   3**

        A.      **ADT Has A Valid Interest In Its Trademark.                       5**

        B.      **Defendants Have Created A Likelihood Of Confusion.               5**

                *Strength of ADT's Mark*                                         **6**

                *Similarity of Marks*                                           **6**

                *Similarity of Products and Services*                           **7**

                *Similarity of Sales Methods*                                   **7**

                *Similarity of Advertising Methods*                             **8**

                *Defendants' Intent*                                            **8**

                *Actual Confusion*                                              **10**

                *Conclusion*                                                    **14**

II.     **ADT Is Entitled To Judgment On Count Two Because Vivint's Confusion
        Of ADT's Customers Violates The Common Law Of Unfair Competition.        14**

III.    **ADT Is Entitled To Summary Judgment On Count Three Because
        Vivint's Confusion Of ADT's Customers Violates The FDUTPA.               17**

IV.     **The Court Should Award A Permanent Injunction.                         18**

CONCLUSION

ADT LLC moves the Court pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment on Counts I, II and III of the Complaint, and for entry of a permanent injunction, reserving only awards of damages for trial, and in support states:

## INTRODUCTION

This case is about Vivint's deceptive sales pitches to ADT customers across the country. ADT is the nation's largest provider of residential alarm systems.  Vivint is ADT's largest competitor.  ADT received reports from over 900 customers that Vivint sales agents were falsely representing that they were somehow affiliated with ADT – *e.g.*, that they were with ADT, or that Vivint had taken over ADT, or that Vivint supplies ADT's alarm equipment – when in fact they have no ADT affiliation whatsoever.  This deception confuses ADT's customers, winning their interest and trust in order to switch their alarm services to Vivint in the guise of an "upgrade" of their ADT alarm systems – a tort commonly called "slamming."  Vivint, by its Chief Compliance Officer, has conceded in this case that Vivint's agents use deceptive sales pitches with ADT's customers:

> Q.  Does Vivint know approximately how many deceptive sales practices have occurred to ADT customers?
>
> A.  I don't.  Well, one is – I guess I should go back.  I believe I'm here as a representative of the company.  I believe, based upon what I've heard in some of these situations, that there were deceptive sales practices engaged in by Vivint sales representatives directed towards ADT customers.

[SOF Exhibit 3 at 52 (Wilcox tr. at 203-04).]  ADT seeks legal and equitable relief under the Lanham Act, 15 U.S.C. § 1125(a), the FDUTPA, and the common law of unfair competition.

In this motion, ADT asks the Court to enter summary judgment on liability on Counts, I, II and III of its complaint.  ADT acknowledges that disputed facts preclude summary judgment on ADT's claims for damages, and so limits this motion to its prayer for equitable relief.

**FACTS**

The governing facts are set forth in the Statement of Undisputed Facts ("UF") and the Court is respectfully referred to it for the facts governing this motion. This motion cites to the exhibits that accompany the Statement of Undisputed Facts as "SOF Exhibits."

**ARGUMENT**

The Court may award summary judgment as a matter of law on unfair competition claims arising under Section 43(a) of the Lanham Act. *See Tana v. Dantanna's,* 611 F.3d 767, 775 n.7 (11th Cir. 2010); *see, e.g., Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1203 (11th Cir. 2001) (affirming summary judgment for Lanham Act plaintiff); *Alliance Metals, Inc. v. Hinely Industries, Inc.*, 222 F.3d 895, 907 (11th Cir. 2000) (same); *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1321 (11th Cir. 1999) (same); *Drew Estate Holding Co., LLC v. Fantasia Distribution, Inc.*, 875 F. Supp. 2d 1360, 1371 (S.D. Fla. 2012); *Varitronics Systems, Inc. v. Merlin Equipment, Inc.*, 682 F. Supp. 1203, 1209 (S.D. Fla. 1988). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). As in a directed verdict motion, the Court must render judgment if it concludes that no "fair-minded jury" could return a different verdict on the evidence presented. *Burger King*, 169 F.3d at 1321.

As shown below, defendants' liability under the Lanham Act turns on whether they have created a likelihood of confusion as to the source of origin of their goods and services by falsely representing to customers an affiliation with ADT. To that end, the Court weighs seven different factors. *See Tana,* 611 F.3d at 774-75; *AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1538 (11th Cir. 1986), *cert. denied*, 481 U.S.1041 (1987). Where, as here, the facts underlying the relevant factors are without *material* dispute, the weighing of these seven factors "is a legal issue which

2

[is] appropriate for the district court to resolve on summary judgment." *Lois Sportswear USA Inc. v. Levi Strauss & Co*., 799 F.2d 867, 876 (2d Cir. 1986); *accord, e.g., Alliance Metals,* 222 F.3d at 907; *Nabisco, Inc. v. Warner-Lambert Co*., 220 F.3d 43, 46 (2d Cir. 2000).  Indeed, the Second Circuit noted in *Lois Sportswear* that fully 70 percent of all trademark cases are resolved on summary judgment, and over 70 percent of those decisions found for the plaintiff trademark holder.  *See id*., 799 F.2d at 876 n.6.

The Eleventh Circuit has described the standards for awarding summary judgment in a Section 43(a) case.  It rejected the argument that a plaintiff must establish all seven factors to win a summary judgment motion, stating:  "The likelihood-of-confusion multifactor test presupposes that various factors will point in opposing directions." *Tana*, 611 F.3d at 775 n.7.  "The role of the court in reviewing a motion for summary judgment is to determine the ultimate question of whether, in light of the evidence as a whole, there is sufficient proof" to warrant trial.  *Id*.  The Eleventh Circuit has also directed that Section 43(a) "be interpreted and applied broadly so as to effectuate its remedial purpose."  *Planetary Motion*, 261 F.3d at 1193.

I.    **ADT Is Entitled To Judgment On Count One Because Defendants Created A Likelihood Of Confusion In Violation Of Section 43(a) Of The Lanham Act.**

ADT asks the Court to enter judgment on Count One of the complaint, [DE 1 at 24-27] for violations of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).  Section 43(a)(1)(A) imposes liability for "false representations" that are "likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association" between the parties or "as to the origin, sponsorship, or approval" of the defendant's goods or services.  15 U.S.C. § 1125(a)(1)(A).  Section 43(a)(1)(A) by its terms provides a statutory right of action for unfair competition arising from false representations of affiliation with a competitor.  *See, e.g., Chow v.*

*Chak Yam Chau*, 555 Fed. Appx. 842, 848 (11th Cir. 2014); *Babbit Elecs., Inc. v. Dynascan Corp.*, 36 F.3d 1161, 1181 (11th Cir. 1994); *Sun-Fun Prods., Inc. v. Suntan Research & Development, Inc.*, 656 F.2d 186, 192 (5th Cir. 1981) ("Sun-Fun bases its unfair competition claim on 15 U.S.C. § 1125"). Section 45 confirms that one of the express purposes of the Lanham Act is "to regulate commerce within the control of Congress … to protect persons engaged in such commerce against unfair competition." 15 U.S.C. § 1127.

The Supreme Court has noted that Section 43(a)(1)(A) nowhere mentions trademarks, and has warned that courts ought not "engraft" trademark infringement requirements onto Section 43(a) cases. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 774 (1992). While a trademark infringement, typically prosecuted under Section 32 of the Act, 15 U.S.C. § 1114, also creates liability as a representation of false affiliation under Section 43(a), infringement of one mark by another is not a predicate for a Section 43(a) claim. *See, e.g., Florida Int'l Univ. Bd. of Trustees v. Florida Nat'l Univ., Inc.*, 830 F.3d 1242, 1266 (11th Cir. 2016) (Section 43(a) claim "much broader" than Section 32 infringement claim); *Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1346 (11th Cir. 2012) (Section 43(a)(1)(A) claim does not turn on whether "the companies have similar names or marks"); *Babbit Elecs.*, 36 F.3d at 1181 ("Section 1125(a) is broader than Section 1114 in that it covers false advertising or description whether or not it involves trademark infringement").

To prove a violation of Section 43(a)(1)(A), "a plaintiff must show (1) that the plaintiff had enforceable trademark rights in the mark or name, and (2) that the defendant made unauthorized use of it 'such that consumers were likely to confuse the two.'" *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 647-48 (11th Cir. 2007), *quoting Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 358 (11th Cir. 1997). The

first prong is a basic standing requirement.  The second is the essential inquiry:  "the touchstone of a section 1125(a) unfair competition claim is whether the defendant's actions are likely to cause confusion."  *Hidalgo Corp. v. Kugel Designs, Inc.*, 509 F. Supp. 2d 1247, 1259 (S.D. Fla. 2007) (internal quotation marks omitted), *quoting Matrix Essentials, Inc. v. Emporium Drug Mart, Inc.*, 988 F.2d 587, 592 (5th Cir. 1993); *accord Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 258-59 (5th Cir. 1980) ("likelihood of confusion" is the "central evidentiary test").  Here, ADT can readily prove both requirements:  A valid ADT trademark, and a likelihood that Vivint's actions are likely to cause confusion.

A.      **ADT Has A Valid Interest In Its Trademark.**

Plaintiff ADT LLC uses the ADT trademarks by license from its sole owner and member, plaintiff ADT U.S. Holdings ("Holdings").  [UF 1.]  Holdings owns ADT's intellectual property, including over one hundred valid trademarks that appear on the principal register of the United States Patent & Trademark Office.  [UF 1.]  In particular, Holdings owns 21 registered word trademarks for the "A-D-T" acronym, and licenses them to ADT LLC.  [UF 1.]  Registration of a mark is *prima facie* evidence of the mark's validity, the registrant's ownership, and its exclusive right to use the mark in commerce.  *See* 15 U.S.C. §§ 1057(b), 1115(a).  ADT is not aware of any basis for Vivint to dispute the validity of ADT's trademarks.

B.      **Defendants Have Created A Likelihood Of Confusion.**

The Eleventh Circuit has identified seven factors to consider in determining a likelihood of confusion:  (1) the strength of the plaintiff's mark; (2) the similarity between the plaintiff's mark and the allegedly infringing mark; (3) the similarity between the products and services offered by the plaintiff and defendant; (4) the similarity of the sales methods; (5) the similarity of advertising methods; (6) the defendant's intent; and (7) actual confusion.  *See, e.g., AmBrit,* 812

F.2d at 1538; *Tana,* 611 F.3d at 774-75; *Alliance Metals,* 222 F.3d at 907.  Because, as shown

below, the evidence conclusively establishes each factor in ADT's favor, the Court should find a

likelihood of confusion in this case and award ADT summary judgment.

### Strength of ADT's Mark

The Eleventh Circuit considers the strength of the plaintiff's mark to be the "second most

important factor" in the seven-factor test for confusion, behind only proof of actual confusion.

*Sovereign Military Hospitaller Order of Saint John of Jerusalem of Rhodes & of Malta v. Fla.*

*Priory of the Knights Hospitallers of the Sovereign Order of Saint John of Jerusalem, Knights of*

*Malta, The Ecumenical Order,* 809 F.3d 1171, 1182 (11th Cir. 2015); *Caliber Auto. Liquidators,*

*Inc. v. Premier Chrysler, Jeep, Dodge, LLC,* 605 F.3d 931, 938 (11th Cir. 2010).  ADT's word

trademark, an acronym, is a registered trademark.  [UF 1.]  Because "ADT" is an arbitrary and

fanciful mark, with no inherent descriptive value, it falls within "the strongest category of

trademarks," *Tana,* 611 F.3d at 774, entitled to the "widest ambit of protection."  *Sun Banks of*

*Florida, Inc. v. Sun Federal Sav. & Loan Ass'n*, 651 F.2d 311, 315 (11th Cir. 1981); *accord*

*Sovereign Military Hospitaller,* 809 F.3d at 1182.  "The stronger the mark, the greater the scope

of protection accorded it."  *Sovereign Military Hospitaller,* 809 F.3d at 1182, *quoting Frehling*

*Enters., Inc. v. Int'l Select Grp., Inc*., 192 F.3d 1330, 1335 (11th Cir. 1999).

ADT spends over $150 million each year to promote and defend its trademarks and

brand.  [SOF Exhibit 1 at 4, ¶ 16.]  ADT's trademarks, as arbitrary and fanciful registered marks,

are entitled to the Act's very highest level of protection.

### Similarity of Marks

ADT does not claim that the Vivint trademark infringes the ADT trademark.  There is no

requirement in Section 43(a) that a claim under it be based on the junior user's adoption of a

6

confusing trademark.  *See, e.g., Suntree Techs.,* 693 F.3d at 1346 (Section 43(a)(1)(A) claim does not turn on whether "the companies have similar names or marks").  Here, the Vivint sales agents do not use a Vivint mark that is similar to the ADT trademarks.  Instead, they use *the identical ADT word trademark* in their sales pitches, falsely claiming to be visiting at ADT's request, to do work required by ADT's merger with Vivint, or some other such pitch that falsely identifies the ADT word trademark with Vivint's goods and services.  Thus, this factor also weighs in favor of confusion because ADT has shown that Vivint actually "used ADT's mark, not that it infringed upon ADT's mark through use of a similar mark."  *ADT, LLC v. Capital Connect, Inc.*, 145 F. Supp. 3d 671, 687 n.14 (S.D. Tex. 2015).

### *Similarity of Products and Services*

"The greater the similarity between the products and services, the greater the likelihood of confusion."  *TracFone Wireless, Inc. v. Pak China Group Co.*, 843 F. Supp. 2d 1284, 1295-96 (S.D. Fla. 2012) *quoting E. Remy Martin & Co., S.A. v. Shaw-Ross Int'l Imports, Inc.*, 756 F.2d 1525, 1529-30 (11th Cir. 1985); *accord Exxon Corp. v. Texas Motor Exch.*, 628 F.2d 500, 505 (5th Cir. 1980).  ADT and Vivint are direct competitors throughout the United States.  [UF 3, 4.] Both install alarm panels and sensors provided by third-party manufacturers such as Honeywell. [UF 5.]  Both monitor alarm systems through their own proprietary monitoring centers.  [UF 5.] Their core alarm monitoring businesses are virtually identical so far as customers are concerned, and both monitor systems constructed from equipment supplied largely by the same third-party providers.  The companies' products and services are sufficiently similar that consumers could expect them to come from the same source.  *Frehling*, 192 F.3d at 1338.

### *Similarity of Sales Methods*

Both companies use the same sales methods.  Both market, sell and install electronic home security systems to the same target customers.  [UF 4.]  Both sell alarm services on a

7

subscription basis.  [UF 6.]  Both price their services similarly; both require an initial contract

term for a period of years, at similar monthly rates, and both amortize the costs of the alarm

equipment they install in a customer's home over the initial contract term.  [UF 6.]  As a result,

both companies expect their customers to remain beyond the initial contract term.  [UF 6.]  Both

sell alarm systems to new customers door-to-door.  [UF 6.].

*Similarity of Advertising Methods*

       Both companies use the same advertising methods.  Both market products and services

door-to-door.  Both advertise on television; on the internet through their websites; through direct

mail and brochures; through charitable giving; and through the yard signs that each posts in the

yards of its subscribing customers. [UF 7.]

*Defendants' Intent*

       "Section 43(a) provides a strict liability cause of action" that requires no showing of

intent or even negligence.  *Vector Products, Inc. v. Hartford Fire Ins. Co.*, 397 F.3d 1316, 1319

(11th Cir. 2005).  "When intent is present, it can 'justify the inference that there is confusing

similarity,'" *Sovereign Military Hospitaller*, 809 F.3d at 1188, *quoting Frehling Enters.*, 192

F.3d at 1340, and it may be proven circumstantially.  *See id*.  Ultimately, however, intent may

weigh only in favor of a finding of likelihood of confusion – never against it.  Because liability

under the Lanham Act (and the likelihood-of-confusion analysis generally) requires no proof of

bad intent, proof of good intent is irrelevant.  "While evil intent may evidence unfair competition

and deception, lack of guile is immaterial." *Fuji Photo Film Co. v. Shinohara Shoji Kabushiki

Kaisha*, 754 F.2d 591, 597 (5th Cir. 1985).  Thus, where bad intent is not established, "this digit

of confusion becomes a nonfactor in the likelihood-of-confusion analysis." *Elvis Presley

Enterprises, Inc. v. Capece,* 141 F.3d 188, 203 (5th Cir. 1998).

The circumstances of this case are indisputable, and they provide an ample basis for the Court to conclude that Vivint, and Vivint's sales agents,[1] acted with intent to mislead ADT's customers in the market for alarm services.  The sales agents, for their part, obviously know that their claims of ADT affiliation are false.  "Simply put, at least a likelihood of an intent to deceive can be inferred from knowingly making false statements."  *Powell v. Home Depot U.S.A., Inc.*, No. 9:07-cv-80435, 2009 WL 3855174, at *9 (S.D. Fla. Nov. 17, 2009) (Hurley, J.); *accord Capital Connect*, 145 Supp. 3d at 687 n.14 (inferring intent from circumstances where sales agents make knowingly false pitches specifically designed "to obtain some advantage from the good will, good name and good trade" of the plaintiff).  Taken together, these knowingly-false sales pitches, all following a script or pattern, repeated by hundreds of different Vivint sales agents on innumerable occasions all across the United States, could only have been made with an intent to mislead ADT's customers to win their business with false claims of ADT affiliation. *See Bourjaily v. United States*, 483 U.S. 171, 179-80 (1987) ("individual pieces of evidence, insufficient in themselves to prove a point, may in cumulation prove it").

The record, further, contains circumstantial proof of Vivint's intent.  Vivint's internal records reflect the receipt of thousands of customer complaints regarding its agents' deceptive sales practices.  [UF 10.]  Vivint continued to allow its agents to make these false claims of affiliation despite a dozen or more state attorney general investigations into Vivint's deceptive sales practices since 2011 that resulted in Vivint's acquiescence in each to the entry of an Assurance of Voluntary Compliance.  [UF 56.]  The Court may infer intent from conduct, *see*

---

[1]   The sales agents' torts, and their intent, are attributable to Vivint because they commit their torts within the scope of their agency.  As the Supreme Court has ruled:  "When a salesperson lies to a customer to make a sale, the tortious conduct is within the scope of employment because it benefits the employer by increasing sales, even though it may violate the employer's policies." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 756 (1998) (citing RESTATEMENT (SECOND) OF AGENCY §§ 228(1)(c), 230).

*Oreck Corp. v. U.S. Floor Sys., Inc.,* 803 F.2d 166, 173 (5th Cir. 1986) ("actions speak louder than words") – here, from permitting its agents to continue to confuse customers in even greater numbers even as it was under investigation for the same deceptive sales practices.

Here, ADT has offered ample proof for concluding that Vivint and Vivint's sales agents have knowingly slammed ADT's customers nationwide for years. These are undisputable facts, and the Court may infer intent from them. But if the Court nonetheless finds a genuine dispute of fact as to Vivint's intent, then the Court should simply ignore intent as a factor in its analysis.

***Actual Confusion***

The Eleventh Circuit has repeatedly held that actual confusion of the plaintiff's customers is by far the most important element of this analysis. Actual customer confusion is "patently the best evidence of likelihood of confusion." *Chevron Chem. Co. v. Voluntary Purchasing Groups, Inc.,* 659 F.2d 695, 705 (5th Cir. 1981); *accord Caliber,* 605 F.3d at 936; *AmBrit,* 812 F.2d at 1543; *Freedom Sav. & Loan Ass'n v. Way,* 757 F.2d 1176, 1185 (11th Cir.), *cert. denied,* 474 U.S. 845 (1985); *World Carpets, Inc. v. Dick Littrell's New World Carpets,* 438 F.2d 482, 489 (5th Cir. 1971). "This circuit's caselaw makes plain that the consumers of the relevant product or service, especially the mark holder's customers, turn the key." *Caliber,* 605 F.3d at 936.

That key spins here. The record here contains abundant proof of actual confusion of ADT customers by Vivint's false representations of ADT affiliation:

- Vivint's admission, based on the proof ADT has developed in this case, that Vivint's sales agents have caused actual confusion of ADT customers; [UF 11]

- Forty accounts, presented by *de bene esse* depositions and sworn declarations, of ADT customers who attest in this case to their own actual confusion caused by Vivint's false claims of ADT affiliation; [UF 12 through UF 52]

- Records of 934 ADT customer complaints about Vivint received by ADT since April 2013, 768 of which are supported by intake call recordings made at or about the time of the Vivint's misconduct, which ADT has produced to Vivint and has summarized here pursuant to Rule 1006; [UF 9]

- Vivint's estimate, stated at its Rule 30(b)(6) deposition, that it has records in its files of thousands of customer complaints regarding its sales agents' deceptive sales practices over the period relevant to this lawsuit; [UF 10.]

- Vivint's own statement, [UF 56] buttressed by ADT's experts [UF 57] and consistent with Judge Wisdom's observation in *AmBrit,* 812 F.2d at 1544, that only four percent of aggrieved customers ever report their experiences; and

- Investigations by over a dozen state attorneys general into the use by Vivint sales agents of representations of false affiliation with other alarm companies, and other deceptive sales practices, that resulted in Vivint's entry in each state into Assurances of Voluntary Compliance from 2011 to 2017.  [UF 58.]

The reported instances of over 900 Vivint complaints from across the country, when enlarged by the four-percent multiplier, suggests an affected population of well over 20,000 ADT customers. And even this number likely understates the total because Vivint has successfully withheld from production one of the principal sources of ADT customer complaints that would likely have enlarged this figure dramatically:  Vivint's files of the state attorney general investigations into customer complaints of Vivint's deceptive sales practices.  [DE 93.]  Had Vivint been compelled to produce these files, ADT would likely have discovered many more ADT customers who voiced their complaints to their states' consumer protection offices instead of to ADT, and this estimate of the numbers of affected customers would have grown substantially.  [DE 93 at 3.]

Even so, the record before this Court is replete with incontestable proof of numerous instances of actual ADT customer confusion, including forty that are substantiated with sworn declarations and live testimony under oath.  [UF 12 through UF 52.]  These sworn accounts prove, in each instance, that the Vivint agent falsely represented to the ADT customer that he was affiliated with ADT.  In each instance, the customer attests that she thought that the Vivint agent represented ADT – either because the agent told her that he was working directly for ADT, or that he was sent at ADT's direction, or that Vivint had merged with or taken over ADT.  Most of the customers swore that they would never have allowed Vivint's agents into their homes had

11

they understood that the agents were not affiliated with ADT.  [*E.g.*, SOF Exhibit 8 at 12-13;
SOF Exhibit 9 at 14; SOF Exhibit 11 at 22; SOF Exhibit 13 at 9.]  All of these customers ended
up signing a Vivint contract, confused by the Vivint sales pitch into believing that the agent was
acting at ADT's request, or that Vivint's new relationship with ADT required them to replace
their ADT contract and equipment.  Beyond these forty sworn accounts, the record before the
Court also contains proof of many hundreds more such incidents, from ADT's records [UF 9] as
well as from Vivint's records.  [UF 10.]  Vivint, at its Rule 30(b)(6) deposition, conceded that its
sales agents use deceptive sales practices to sell alarms to ADT customers.  [UF 11.]

This showing of actual customer confusion far exceeds the showing required to establish
a likelihood of confusion for the purposes of fixing liability under the Lanham Act, or for that
matter the other claims on which ADT now moves.  "The quantum of evidence needed to show
actual confusion is relatively small."  *Caliber*, 605 F.3d at 937, *quoting Jellibeans Inc. v. Skating*
*Clubs of Ga., Inc.*, 716 F.2d 833, 845-46 (11th Cir. 1983).  In *Jellibeans*, the Eleventh Circuit
affirmed a finding of actual confusion based on only three witnesses and a flawed expert survey.
*See id*.  Similarly, in *AmBrit*, the Eleventh Circuit found actual confusion based on only four
customer declarations over defendant's objections that the showing was insufficient in a national
market for consumer goods.  *See AmBrit*, 812 F.2d at 1544.  The Eleventh Circuit disagreed,
concluding that it "takes very little evidence to establish the existence of the actual confusion
factor."  *Id*.  Judge Wisdom explained: "It is likely that many consumers who were confused
never realized they had been confused and that many of those who did realize they had been
confused chose not to spend the time to register a complaint with a faceless corporation."  *Id*.

Consistent with *Caliber*, *Jellibeans* and *AmBrit*, the Eleventh Circuit has consistently
ruled that actual customer confusion is established by only a few proven instances.  "Actual

12

confusion by a few customers is the best evidence of likelihood of confusion by many customers." *Freedom Sav. & Loan*, 757 F.2d at 1185, *following Amstar Corp v. Domino's Pizza, Inc.*, 615 F.2d 252, 263 (5th Cir.), *cert. denied*, 449 U.S. 899 (1980); *accord Safeway Stores, Inc. v. Safeway Disc. Drugs, Inc.*, 675 F.2d 1160, 1167 (11th Cir. 1982); *World Carpets,* 438 F.2d at 489. This is especially true where, as here, the proven instances of actual confusion are actual customers of the plaintiff, not casual consumers with no connection to the business. "Short-lived confusion or confusion of individuals casually acquainted with a business is worthy of little weight, while confusion of actual customers of a business is worthy of substantial weight." *Safeway Stores*, 675 F.2d at 1167 (citation omitted); *accord Caliber*, 605 F.3d at 936.

According to *Safeway Stores*, ADT's proof – forty sworn accounts of its own customers' confusion – is worthy of substantial weight. Indeed, it is beyond dispute. Once actual confusion has been proven, it is rarely disproven. Judge Wisdom rejected Kraft's attempts in *AmBrit* to disprove actual customer confusion by offering declarations from "typical consumers," finding: "The district court properly disregarded this evidence. If Kraft could not find at least a handful of consumers who would agree to testify that they had not been confused, it might as well have defaulted." *AmBrit*, 812 F.2d at 1544 n.69. "Moreover, reason tells us that while very little proof of actual confusion would be necessary to prove the likelihood of confusion, an almost overwhelming amount of proof would be necessary to refute such proof." *World Carpets,* 438 F.2d at 489; *accord Caliber* at 937 n.28. A few instances of proven confusion of ADT's customers by Vivint's sales agents provide an ample basis for summary judgment. Indeed, this Court has awarded plaintiff summary judgment in a Lanham Act case largely on the strength of only *one* "compelling" account of actual confusion. *Varitronics*, 682 F. Supp. at 1208-09. Forty far exceeds the required quantum. *See Caliber*, 605 F.3d at 937; *Jellibeans,* 716 F.2d at 845-46.

13

*Conclusion*

Where the underlying facts are not in genuine dispute, the Court weighs these elements as a matter of law to decide whether a likelihood of confusion exists.  Here, the weighing is easy – each and every factor is conclusively established by uncontroverted record evidence, and all weigh in favor of a finding of likely confusion.  ADT has presented overwhelming proof of actual confusion by forty actual ADT customers, who were each sufficiently misled by Vivint's agents to have signed Vivint contracts in the confused belief they were trading with someone affiliated with ADT.  No published decision requires more.  Proof of actual confusion is "patently the best evidence of likelihood of confusion," *Chevron,* 659 F.2d at 705, and ADT not only has proven it:  Vivint has conceded it.  [UF 11.]  The remaining relevant factors – the strength of ADT's mark, similarity of marks, similarity of products, similarity of sales methods, similarity of advertising methods, and Vivint's intent – all of them weigh conclusively in ADT's favor.  Of them all, only Vivint's intent might be subject to dispute, but that does not matter here because Vivint's good intent cannot weigh against entry of summary judgment here.  *See Elvis Presley Enterprises*, 141 F.3d at 203; *Vector Products*, 397 F.3d at 1319.  On this record, the Court should award ADT summary judgment on Count I of the complaint.

## II.    ADT Is Entitled To Judgment On Count Two Because Vivint's Confusion Of ADT's Customers Violates The Common Law Of Unfair Competition.

On this same record, the Court should also award ADT summary judgment on Count II, ADT's unfair competition claim.  [DE 1 at 27-31.]  Section 43(a) in effect codified the common law of unfair competition.  Both provide a remedy for a seller's acts that are likely to confuse consumers.  "Whether we call the violation infringement, unfair competition or false designation of origin, the test is identical – is there a 'likelihood of confusion?'" *Two Pesos*, 505 U.S. at 780 (Stevens, J., concurring) *quoting New West Corp. v. NYM Co. of California, Inc.*, 595 F.2d 1194,

1201 (9th Cir. 1979).  But the common-law tort is not tied to statutory language; "unfair competition" is "a 'plastic' concept at common law," *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1389 (2014), *quoting Ely-Norris Safe Co. v. Mosler Safe Co.*, 7 F.2d 603, 604 (2d Cir. 1925) (L. Hand, J.), that provides an "umbrella for all statutory and non-statutory causes of action arising out of business conduct which is contrary to honest practices in industrial or commercial matters."  *Am Heritage Life Ins. Co. v. Heritage Life Ins. Co*., 494 F.2d 3, 14 (5th Cir. 1974); *accord Alphamed Pharm. Corp. v. Arriva Pharm., Inc*., 432 F. Supp. 2d 1319, 1353 (S.D. Fla. 2006), *aff'd*, 294 Fed. App. 501 (11th Cir.  2008); *Stoneworks, Inc. v. Empire Marble & Granite, Inc*., 1998 WL 998962 at *5, 49 U.S.P.Q.2d 1760 (S.D. Fla. 1998); *Chassis Master Corp. v. Borrego*, 610 F. Supp. 473, 479 (S.D. Fla. 1985).  Historically, "the law of unfair competition has its roots in the common-law tort of deceit: its general concern is with protecting consumers from confusion as to source."  *Bonito Boats v. Thunder Craft Boats*, 489 U.S. 141, 157 (1989).  Likely confusion of consumers for an unfair competition claim thus rests on the same analysis that the Court uses to determine a likelihood of confusion for the purposes of Section 43(a) of the Lanham Act.  *See Suntree*, 693 F.3d at 1346.

Thus, a violation of Section 43(a) also establishes an unfair competition claim as a matter of law.  *See id*. at 1345; *Florida Int'l Univ. Bd. of Trustees v. Florida Nat'l Univ., Inc*., 830 F.3d 1242, 1267 (11th Cir. 2016).  But "the unfair competition claim is a 'broader' one that requires the court to examine conduct by the defendant that would not be dispositive of an infringement claim," *Freedom Savings & Loan,* 757 F.2d at 1186; *accord Prof'l Golfers Ass'n v. Banks Life & Cas. Co*., 514 F.2d 665, 671 (5th Cir. 1975) (unfair competition "is a more broadly conceived tort"), *following B.H. Bunn Co. v. AAA Replacement Parts Co*., 451 F.2d 1254, 1264 (5th Cir. 1971); *Boston Prof'l Hockey Ass'n, Inc. v. Dallas Cap & Emblem Mfg., Inc*., 510 F.2d 1004,

1010 (5th Cir. 1975) ("simplest form of [unfair competition] is to use the name or trademark of another, but the law goes further than that"); *Sentco, Inc. v. McCulloh*, 68 So. 2d 577, 580 (Fla. 1953) ("we are not dealing with the statutory rights," but "with the broader question of unfair competition where fairness, decency and common honesty are involved"), and the tort aims to protect the plaintiff's business and the public, not its trademark. *See Sun Coast v. Shupe*, 52 So. 2d 805 (Fla. 1951) ("it is not the name which is protected, but the business [and] the public").

Accordingly, the Restatement explains that the unfair competition claim lies

in connection with the marketing of goods or services, [where] the actor makes a representation likely to deceive or mislead prospective purchasers by causing the mistaken belief that the actor's business is the business of the other, or that the actor is the agent, affiliate, or associate of the other, or that the goods or services that the actor markets are produced, sponsored, or approved by the other.

RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 4 (1995). *Accord Donald Frederick Evans & Assocs., Inc. v. Continental Homes, Inc.*, 785 F.2d 897, 914 (11th Cir. 1986), *following Prof'l Golfers Ass'n*, 514 F.2d at 671 ("likelihood of consumer confusion and passing off one's goods or services as those of another constitute the gravamen of the action"); *Chevron,* 659 F.2d at 701 ("whole basis" of unfair competition claim "is that no one shall sell his goods in such a way as to make it appear that they come from some other source"). Thus, a seller may not "beguile prospective purchasers into buying their wares under the impression they are buying those of their rivals by the use of imitative devices or other unfair means," nor use any "artifice or contrivance for the purpose of representing his goods or his business as the goods or business of a rival tradesman, thereby deceiving the public by causing them to trade with him when they intended to trade, and would have otherwise traded, with his rival." *Stagg Shop of Miami, Inc. v. Moss*, 120 So. 2d 39, 40-41 (2d DCA 1960), *following Webb's City, Inc. v. Bell Bakeries*, 226 F.2d 700, 702 (5th Cir. 1955); *accord, e.g., E.R. Squibb & Sons, Inc. v. Princeton Pharm., Inc.*,

16

No. 88-cv-6527, 1990 WL 272707, *10 (S.D. Fla. Sept. 4, 1990) (following *Stagg Shop* to grant plaintiff summary judgment on unfair competition claim where "defendants contrived to represent their goods as those of plaintiff").

This law, applied to the facts found in this record, compels entry of judgment in ADT's favor on its unfair competition claim. Vivint's sales agents contrive, in innumerable false sales pitches to ADT customers across the country, to represent Vivint's goods and services as those of ADT, often by claiming, in the words of the Restatement, that the Vivint representative is "the agent, affiliate, or associate" of ADT. This is exactly the conduct that the common law of unfair competition prohibits. ADT's proof shows that Vivint's agents "beguile" ADT's customers into switching their alarm services through the artifice of false claims that Vivint is associated with ADT, that the customer is required to switch providers, or that the customer will receive a benefit from accepting a product "upgrade" that is part of the customer's ongoing relationship with ADT, and that will not disrupt the customer's ADT alarm service. Based on ADT's proof of actual customer confusion caused by Vivint's false sales pitches, discussed in Part I above, the Court should award ADT summary judgment on Count II of the complaint as well.

## III.    ADT Is Entitled To Summary Judgment On Count Three Because Vivint's Confusion Of ADT's Customers Violates The FDUTPA.

The Court should also award ADT summary judgment on Count III, the FDUTPA claim. [DE 1 at 31-34.] The FDUTPA provides a state statutory analogue of the common-law unfair competition claim. The FDUTPA prohibits "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." FLA. STAT. § 501.204(1). As with claims for unfair competition, a violation of Section 43(a) of the Lanham Act also establishes a claim under the FDUTPA. *See, e.g., Natural Answers, Inc. v.*

*SmithKline Beecham Corp.*, 529 F.3d 1325, 1333 (11th Cir. 2008); *Gift of Learning Found., Inc. v. TGC, Inc.*, 329 F.3d 792, 802 (11th Cir. 2003). *Coach, Inc. v. Swap Shop,* 916 F. Supp. 2d 1271, 1283 (S.D. Fla. 2012); *TracFone Wireless, Inc. v. GSM Group, Inc.,* 555 F. Supp. 2d 1331, 1338 (S.D. Fla. 2008).  But the language of the FDUTPA extends beyond Section 43(a) to reach all instances in which a defendant is "passing off their products as those of Plaintiff or someone associated or affiliated with Plaintiff," regardless of method.  *Laboratorios Roldan*, 902 F. Supp. at 1570.  "This is the type of behavior which the statute was meant to protect against."  *Id.*

Again, ADT has presented the Court with facts that show beyond any reasonable dispute that Vivint sells alarms to ADT customers using false claims of ADT affiliation that are likely to confuse ADT customers, and that in fact have caused actual confusion of ADT customers.  The Court should find Vivint liable under the FDUTPA for the same reasons it should find Vivint liable to ADT under the Lanham Act and the common law of unfair competition.

**IV.    The Court Should Award A Permanent Injunction.**

Money damages are a legal remedy with disputed facts that must await trial.  An injunction, however, is an equitable remedy for the Court to award, and it lies here to bar Vivint from continuing to confuse consumers with false claims of ADT affiliation.  The law is clear that once the likelihood of confusion is established, "complete injunctions against the infringing party are the order of the day" because "the public deserves not to be led astray."  *Angel Flight of Georgia, Inc. v. Angel Flight America, Inc.*, 522 F.3d 1200, 1209 (11th Cir. 2008).  *Accord, e.g.,* RESTATEMENT (THIRD) UNFAIR COMPETITION § 35, comment b (1995) ("in cases of deceptive marketing, trademark infringement, or trademark dilution, a prevailing plaintiff is ordinarily awarded injunctive relief to protect both the plaintiff and the public from the likelihood of future harm"); 5 MCCARTHY ON TRADEMARKS § 30:1 (4th ed. 2017) (permanent injunction "is the usual

and normal remedy" for a violation of Section 43(a)).  "Likelihood of confusion constitutes

irreparable injury."  *Laboratorios Roldan, C. por A. v. Tex Int'l, Inc.*, 902 F. Supp. 1555, 1571

(S.D. Fla. 1995); *accord M & E Distributors, Inc. v. Worley*, 840 So. 2d 457, 459 (Fla. 4th DCA

2003), *following, inter alia, Stagg Shop of Miami, Inc. v. Moss*, 120 So. 2d 39, 40-41 (Fla. 2d

DCA 1960). Vivint's officers have elsewhere attested to this proposition.[2] [DE 54-8; DE 54-9.]

ADT's need for this injunction is apparent.  Vivint has promised in a dozen Assurances

of Voluntary Compliance with state attorneys general across the country to stop slamming its

competitors' customers, [UF 58] yet Vivint continues to slam customers with abandon.  ADT's

proposed form of injunction (Exhibit) imposes no hardship on Vivint because it does not restrain

lawful competition.  It tracks the provisions of the Electronic Security Association's code of con-

duct.  [SOF Exhibit 25.]  It requires Vivint's sales agents to state their affiliation to consumers,

and it prohibits specific false claims of affiliation of the kind that Vivint's sales agents have used

to confuse ADT customers.  Vivint admits that the ESA code "is a correct statement of the

standards of conduct that govern sellers of residential electronic alarm systems," [UF 59] and

---

[2] Vivint should be estopped from contesting irreparable harm here because Vivint's officers stated
in other cases under penalty of perjury that the confusion caused by customer slams causes Vivint
irreparable injury, [UF 8; DE 54-8; DE 54-9] and Vivint won injunctions in one of them as a
result. [UF 53 through UF 55.] Because Vivint took a position in one court, supported by a sworn
statement, and won a benefit from the court as a result, Vivint should be estopped from taking the
opposite position in this case.  *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001); *Slater v.
U.S. Steel Corp.*, No. 12-15548, 2017 WL 4110047, *4-5 (11th Cir. Sept. 18, 2017).  To find an
estoppel, the Eleventh Circuit requires a sworn statement in the first case and a deliberate change
of position in the second.  *See Slater, supra.  Slater* explains that the second factor "looks towards
cold manipulation and not an unthinking or confused blunder," *id.* at *4, so that an estoppel will
prevent "parties from deliberately changing positions according to the exigencies of the moment."
*Id., quoting New Hampshire*, 532 U.S. at 749-50. Both factors are present here. Vivint did submit
sworn statements by its officers [DE 54-8; DE 54-9] and Vivint's *volte-face* is nothing more than
"playing fast and loose with the courts to suit the exigencies of self-interest." *Burnes v. Pemco
Aeroplex,* 291 F.3d 1282, 1285 (11th Cir. 2002), *overruled on other grounds by Slater, supra.*

Vivint has elsewhere proposed the ESA code as an appropriate model for fashioning injunctive relief in cases such as these.  [SOF Exhibit 22 at 18.]

ADT, in following the ESA code, has tailored the proposed form of injunction to avoid enjoining any lawful competition in the market for alarm services.  Vivint has elsewhere agreed that an injunction that prohibits only unlawful imposes no hardship on the enjoined party.  [SOF Exhibit 22 at 12.]  To the extent the injunction might chill lawful conduct, that is no reason not to enter the injunction.  "In fashioning relief against a party who has transgressed the governing legal standards, a court of equity is free to proscribe activities that, standing alone, would have been unassailable."  *Cumulus Media, Inc. v. Clear Channel Comms., In*c., 304 F.3d 1167, 1179 (11th Cir. 2002), *quoting AmBrit*, 812 F.2d at 1548; *accord Chevron*, 659 F.2d at 705.

Finally, the public interest favors entry of this injunction.  The Lanham Act was passed to secure for the trademark owner "the goodwill of his business *and* to protect the ability of consumers to distinguish among competing producers."  *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 198 (1985) (emphasis added).  The public interest favors the injunction because "the public deserves not to be led astray."  *Angel Flight of Georgia,* 522 F.3d at 1209.  There is no credible countervailing public interest to be served by permitting a seller to continue to exploit a sales method that the Court has already found to be likely to confuse consumers.

ADT has established the absence of any genuine dispute of material fact that Vivint's sales agents made false claims of affiliation with ADT in their sales to ADT's customers.  Vivint admits as much.  [UF 11.]  As a matter of law, these proven instances require a finding that Vivint's acts are likely to confuse consumers under the governing statutes and the common law of unfair competition.  Based on that finding, the Court should enter an order permanently enjoining Vivint from continuing to make such false claims in the future.

20

## CONCLUSION

The motion should be granted.

Dated: October 2, 2017                    Respectfully submitted,

**McNEW P.A.**

/s/ C. Sanders McNew
_____
C. Sanders McNew
mcnew@mcnew.net
Florida Bar No. 0090561
2385 NW Executive Center Drive, Suite 100
Boca Raton, Florida 33431
Tel: (561) 299-0257
Fax: (561) 299-3705

  -and-

**SHOOK, HARDY & BACON LLP**

Richard G. Sander (*pro hac vice*)
rsander@shb.com
S. Kirk Ingebretsen (*pro hac vice*)
kingebretsen@shb.com
Daniel Rohner (*pro hac vice*)
drohner@shb.com
1660 17th Street, Suite 450
Denver, Colorado 80202
Tel: (303) 285-5300

Charles C. Eblen (*pro hac vice*)
ceblen@shb.com
Jason R. Scott (*pro hac vice*)
jscott@shb.com
2555 Grand Boulevard
Kansas City, Missouri 64108
Tel: (816) 474-6550

*Counsel for the Plaintiffs, ADT LLC*
  *-and- ADT US Holdings, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this second day of October, 2017, I caused a true and correct copy of the foregoing Motion to be served by CM/ECF on all parties listed to receive electronic service for this case.


s/ C. Sanders McNew
_____
C. Sanders McNew