UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:17-cv-80432-DMM

**ADT, LLC and ADT US HOLDINGS, INC.**,

    Plaintiffs,

v.

**VIVINT, INC.**,

    Defendant.

_____/

## DEFENDANT VIVINT, INC.'S RE-FILED MOTION TO EXCLUDE EXPERT REPORT AND TESTIMONY OF JOSEPH DANDURAND[1]

Defendant, Vivint, Inc. ("Vivint") submits this motion to exclude the expert report and testimony of Plaintiffs ADT, LLC and ADT US Holdings, Inc.'s (collectively, "Plaintiffs" or "ADT") expert Joseph Dandurand.

### INTRODUCTION

The crux of Plaintiffs' Complaint (ECF No. 1) is that Vivint, a competitor in the electronic security equipment and services industry, allegedly diverted customers away from Plaintiffs as a result of certain purported deceptive sales tactics by Vivint salespersons. Based on that theory, Plaintiffs asserted claims for: (i) unfair competition under the Lanham Act, (ii) common law unfair competition, (iii) violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), and (iv) common law trade slander/commercial disparagement.[2]

On June 26, 2017, Plaintiffs submitted the Expert Report of Joseph Dandurand. In addition, on July 20, 2017, Plaintiffs provided a Supplemental Report, and on August 25, 2017,

---

[1] This Motion is re-filed in accordance with the Court's directive in its Order Denying Defendant's Motion to Seal [ECF No. 116].

[2] On August 3, 2017, this Court entered its Order granting, in part, and denying, in part, Vivint's Motion to Dismiss the Complaint brought by Plaintiffs. (ECF No. 61). By this Order, Plaintiffs were granted leave to file an Amended Complaint. The Plaintiffs elected not to do so. As a result, certain of Plaintiffs' claims have been dismissed with prejudice and/or significantly reduced in scope. For example, Plaintiffs cannot proceed with their common law trade slander/commercial disparagement claim and can only seek injunctive relief on the FDUTPA claim.

Plaintiffs provided a Second Supplemental Report (collectively, with the Expert Report and the Supplemental Report, the "Dandurand Report"), attached as **Composite Exhibit A**.[3] Based on the Dandurand Report and the sworn testimony given at Dandurand's deposition on July 24, 2017, it appears that Dandurand, an attorney and former trial court and appellate judge who previously served as Deputy Attorney General for the State of Missouri,[4] was presented with certain information selected by Plaintiffs' counsel, consisting of customer declarations, deceptive sale practices ("DSP") reports, and audio recordings of conversations between customers and ADT representatives *after* the customers' alleged encounters with Vivint salespersons. Dandurand purports to opine, based on his review of a random selection of this information, that the purported statements of Vivint's salespersons are deceptive, provide an unfair advantage in the marketplace over the customer, and are systemic and presumably condoned by Vivint management.

As demonstrated below, the Dandurand Report should be stricken, and Dandurand should be precluded from giving any testimony or other evidence in this case, for the following reasons:

*First*, Dandurand's opinions are nothing more than legal conclusions, which are not proper subjects of expert testimony;

---

[3] Plaintiffs provided the Supplemental Report and the Second Supplemental Report late, as they were served almost one month and two months, respectively, the deadline to disclose expert reports, which was June 26, 2017. The Second Supplemental Report was also served after the deposition of Dandurand.

[4] Dandurand's purported expertise is based on his prosecution of consumer protection-related cases while serving as Deputy Attorney General for Missouri, and the Second Supplemental Report includes references to complaints against Vivint and a civil action taken against Vivint by the Attorney General's Office during his time there. Dandurand's expert testimony could thus potentially violate Rule 4-1.11: Special Conflicts of Interest for Former and Current Government Officers and Employees, of the Missouri Rules of Professional Conduct. Section (a) of that rule prohibits a former government attorney from representing a client in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee, unless the appropriate government agency gives its informed consent, confirmed in writing, to the representation. The commentary to this section indicates the rule not only protects the governmental agency, but prevents a lawyer from exploiting public office for the advantage of another client. While ADT may argue that Dandurand is an expert and technically does not "represent" ADT, it would appear that at least the spirit of the rule is violated by his testimony if the Attorney General's Office has not provided informed, written consent. Vivint has no knowledge as to any such written consent from the Missouri Attorney General's Office.

*Second*, the matters upon which Dandurand opines are not matters outside the scope of ordinary knowledge, and unfair prejudice would result from cloaking what is essentially closing argument by counsel as an expert report;

*Third*, Dandurand does not have the necessary expertise to formulate his expert opinions; and

*Fourth*, the Dandurand Report is not based on sufficient, reliable facts and data.

### LEGAL STANDARDS GOVERNING EXPERT TESTIMONY – THE *DAUBERT* STANDARD

*See* the *Daubert* standard in Vivint's Motion to Exclude Expert Report and Testimony of William T. Urban, at p. 2, which is being filed contemporaneously with this Motion.

### ARGUMENT

### II.  The Dandurand Report Consists of Legal Conclusions, Which Are Not Proper Subjects of Expert Testimony.

While Federal Rule of Evidence 704 allows an expert to "testify as to his opinion on an ultimate issue of fact," an expert cannot tell the judge or jury what result to reach under the law. *See United States ex rel. Phalp v. Lincare Holdings, Inc.*, 116 F. Supp. 3d 1326, 1341 (S.D. Fla. 2015) (citing *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990)). Expert opinions that opine on the legal implications of a party's conduct, or that apply the relevant law to the facts of the case, must be excluded. *See, e.g., Lincare Holdings*, 116 F. Supp. 3d at 1341 (citing *United States v. Hunter*, 373 Fed. Appx. 973, 978 (11th Cir. 2010) ("the witness also cannot testify to the legal implications of conduct because the court must be the jury's only source of law.")); *Falic v. Legg Mason Wood Walker*, 2004 WL 5483681, at *3 (S.D. Fla. Dec. 13, 2004); *Pleasant Valley Biofuels, LLC v. Sanchez-Medina*, 2014 WL 2855062, at *5 (S.D. Fla. June 23, 2014) (excluding expert from opining that "an escrow agent has a fiduciary duty to all parties to the escrow agreement," stating that "[a]n expert witness may not testify as to the state of the law, however; this is the Court's duty."); *Plantation Pipeline Co. v. Cont'l Cas. Co.*, 2008 WL 4737163, at *7 (N.D. Ga. July 31, 2008) (citing *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991) ("[A]n expert may opine on an issue of fact within the jury's province, he may not give testimony stating ultimate legal conclusions based on those facts.")); *Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988) ("[T]estimony on the ultimate factual questions aids the jury in reaching a verdict; testimony which articulates and applies the relevant

3

law, however, circumvents the jury's decision-making function by telling it how to decide the case.").

As stated by this District in *Cordoves v. Miami-Dade County*, 104 F. Supp. 3d 1350, 1365 (S.D. Fla. 2015) (citations omitted):

> '[A]n expert may offer his opinion as to facts that, if found, would support a conclusion that the legal standard at issue was satisfied, but he may not testify as to whether the legal standard has been satisfied.' … If testimony 'tracks the language of the applicable statute' or uses a term that 'has a specialized legal meaning that is more precise than the lay understanding of the term,' the testimony is an impermissible legal conclusion.

Notably, Dandurand admitted at his deposition that, when he served as a trial court judge, he had sustained objections to experts testifying about conclusions of law, and he recalled granting motions to exclude experts for that reason. (Dandurand Dep., attached as **Exhibit B**, at 79:6-23; 81:11-14). He also agreed that expert testimony exists to assist a jury, but not to take the ultimate determination away from the jury. (*Id*. at 87:6-10). However, despite Dandurand's acknowledgment that an expert is not permitted to testify as to conclusions of law, the Dandurand Report is rife with legal conclusions, including statements that explicitly and implicitly conclude that the alleged sale practices of Vivint's salespersons are "deceptive" and "unfair." For example, Dandurand states that:

- "the statements of Vivint sales representatives . . . are statements that in my experience ***are designed to, and do, mislead*** consumers into entering into contracts and making purchases based on mistaken beliefs as to the sale agents' affiliations and product offerings" and ***"the designed, seemingly innocuous statements made by Vivint sales agents . . . create misimpressions of relationships, and are designed to cause them to unwittingly place their trust in complete strangers***. Such practices are harmful to consumers, and ***give the seller an unfair advantage*** both in the market and over the consumer."
- the representations mirror allegations received via consumer complaints "we received via consumer complaints through the years in the Attorney General's office. ***We took action numerous times against deceptive vendors in cases such as these***, ***where Missouri citizens were unfairly or unwittingly deceived into entering contracts that were detrimental to them.***"

4

- *"[t]he repeated similarity of the deceptive sale practice models*, and the geographic ubiquity of the practices, clearly support the allegation that these practices are systemic and supported by Vivint management, and not mere coincidental acts by rogue sale representatives."

(Dandurand Report (Ex. A) at 14) (Emphasis added).  Such statements are nothing more than unsupported legal conclusions.

Other courts have ruled similarly in cases involving allegations of unfair sales or marketing practices.  For instance, in *In re ConAgra Foods, Inc.,* 302 F.R.D. 537 (C.D. Cal. Aug. 1, 2014), consumers brought a putative class action against a cooking oil manufacturer, alleging that it deceptively and misleadingly marketed cooking oils made from genetically-modified organisms as "100% Natural" in violation of the Magnuson-Moss Warranty Act, Nebraska's Consumer Protection Act, and Nebraska's Uniform Deceptive Trade Practices Act, and asserting claims for violations of state consumer protection acts, breach of express and implied warranties, and unjust enrichment. *Id.* at 547.  The defendant manufacturer moved to strike the declarations of the consumers' experts.  In addressing what portions of the opinion of one of the experts was permissible, the court noted that the expert's opinion that the defendant "falsely and deceptively labeled" its products was not admissible. *Id.* at 558.  The court noted "false" and "deceptive" are judicially defined terms, and thus the expert's use of these terms constituted the offering of an improper legal opinion usurping the role of the court.  *Id.*  The court therefore struck the expert's opinion that the defendant "falsely and deceptively labeled" its products.  *Id.*

Likewise, in *Bourdon v. Mountain W. Farm Bureau Mut. Ins. Co.,* 2013 WL 4446968 (D. Mont. Aug. 15, 2013), the plaintiff alleged the defendant insurer violated Montana's Unfair Trade Practices Act.  *Id.* at *1.  The defendant moved to exclude portions of the plaintiff's expert's testimony, arguing that, based on his expert report, he would attempt to offer impermissible legal conclusions. *Id.* at *6.  The court granted the defendant's motion in limine, barring the expert from offering legal conclusions, specifically that the defendant violated the Unfair Trade Practices Act, in his testimony.  *Id.*  The court noted that while an expert may testify as to the facts underlying a plaintiff's allegation that the defendant violated a statute, the expert cannot say that the defendant did, in fact, violate the statute.  *Id.*  The court further noted that the expert repeatedly asserted in his expert report, either explicitly or implicitly, that the defendant violated the Unfair Trade Practices Act.  *Id.*

In another case addressing such issues, *In re Motor Fuel Temperature Sales Practices Litig.,* 2012 WL 3611010 (D. Kan. Aug. 22, 2012), the plaintiffs brought class action claims against the defendants for violation of the Kansas Consumer Protection Act ("KCPA"), claiming that because the defendants advertised and sold motor fuel for a specified price per gallon without disclosing or accounting for temperature expansion, they willfully omitted material facts related to the energy content and value of motor fuel and engaged in unfair and unconscionable sales practices. *Id.* at *1. The plaintiffs later filed a motion *in limine* seeking, *inter alia*, to preclude expert testimony whether certain acts and/or omissions are "legal," "authorized," "deceptive," "unconscionable," "misleading" or "unfair." *Id.* at *2. Specifically, the plaintiffs asserted that testimony regarding the legality of automatic temperature compensation would contravene the court's duty to instruct the jury on the law and unfairly prejudice and mislead the jury. *Id.* The plaintiffs also asserted that to allow witnesses to opine whether selling retail motor fuel without disclosing or adjusting for temperature is "deceptive," "unconscionable," "misleading" or "unfair" would invade the province of the jury to determine whether defendants' conduct is deceptive or unconscionable under the KCPA. *Id.* The Kansas District Court found that the expert witnesses could not express legal conclusions, and specifically stated that they could not opine whether certain conduct is "deceptive" or "unconscionable" under the KCPA. *Id.* at *3. As to testimony that certain acts were "misleading" or "unfair," the court noted it had previously found that fairness is primarily in the eye of the beholder and that the factfinder alone should assess whether temperature correction at retail would be fairer than the status quo. *Id.* Accordingly, the court found that the witnesses could not testify whether certain acts and/or omissions are "legal," "authorized," "deceptive," "unconscionable," "misleading" or "unfair." *Id.*

Similarly, in *F.T.C. v. Amy Travel Serv., Inc.,* 875 F.2d 564 (7th Cir. 1989), the Federal Trade Commission brought suit against certain defendants for a scam involving the sale of bargain vacation vouchers. *Id.* at 566. One issue was whether the trial court abused its discretion in excluding the testimony of the defendants' expert in travel marketing. During his testimony, defense counsel asked whether the defendants' sales practices were "deceptive or misleading." *Id.* at 573. The court found that the magistrate properly prevented the expert from answering since the question called for him to render a legal opinion. *Id.* The court also noted that the magistrate did not abuse her discretion in preventing the expert from commenting on

consumer perception of the sales pitch, finding that testimony on how consumers would react to sales material should be given by an expert in consumer psychology or consumer behavior. *Id.* The court further stated that the magistrate correctly excluded testimony from a travel law expert on other advertising methods used by travel companies and refused to allow one of defendants' employees to give his opinion on whether the defendants' methods were deceptive or unfair. *Id.*

Here, like the experts in the above cases, Dandurand has crossed the line from opinion to improper legal conclusions by opining that the alleged sales practices are "deceptive" or provide an "unfair advantage." Given same, Dandurand's opinions are inadmissible, and the Dandurand Report must be stricken.

### III. The Dandurand Report Should Be Stricken as it Does Not Address Matters Beyond the Understanding of a Lay Person and Because of the Danger of Unfair Prejudice.

Although Rule 702 affords a court wide latitude to admit expert testimony, such testimony is inadmissible if it does not meet two related requirements: (1) it must be based on the special knowledge of the expert; and (2) it must be helpful to the finder of fact. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589-91 (1993); *Andrews v. Metro N. Commuter R.R. Co.*, 882 F.2d 705, 708 (2d Cir. 1989) ("For an expert's testimony to be admissible . . . it must be directed to matters within the witness' scientific, technical, or specialized knowledge and not to lay matters which a jury is capable of understanding and deciding without the expert's help."); *United States v. Jackson*, 425 F.2d 574, 576 (D.C. Cir. 1970) ("'To warrant the use of expert testimony . . . two elements are required. First, the subject of the inference must be so distinctively related to some science, profession, business or occupation as to be beyond the ken of the average layman, and second, the witness must have such skill, knowledge or experience in that field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth.'" (quoting McCormick, Evidence § 13)). Expert testimony "generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *U.S. v. Frazier*, 387 F.3d 1244, 1262-63 (11th 2004).

In addition, courts have recognized the "powerful and potentially misleading effect of expert evidence," *id.* at 1263 (internal citation omitted), and as such, they have not hesitated to exclude even relevant expert testimony under Fed. R. Evid. 403, which permits the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay,

7

waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. "Simply put, expert testimony may be assigned talismanic significance in the eyes of lay jurors, and, therefore, the district courts must take care to weigh the value of such evidence against its potential to mislead or confuse." *Frazier*, 387 F.3d at 1263.

In this case, the Dandurand Report is not "helpful" under the above criteria. There is nothing in the Dandurand Report that is beyond the understanding of the average person. A lay person can decide, without an expert's help, the matters upon which Dandurand opines – for instance, whether it is deceptive and misleading for Vivint salespersons to allegedly tell people that they were at their homes on behalf of ADT or that they are affiliated with ADT. (Dandurand Dep. (Ex. B) at 112:4-15). Similarly, a lay person can decide whether the alleged sales practices are "designed to and do deceive people," whether there is a "negative impact" created by deceptive sales practices, or whether the "elderly, distracted or infirm consumers" have "increased vulnerability" to deceptive sales practices because they are more easily swayed, distracted, and confused. (Dandurand Report (Ex. A); Dandurand Dep. (Ex. B) at 115:15-18; 129:12-25).

Dandurand's opinions do not aid the fact finder and do nothing more than advance that which Plaintiffs' attorneys can argue in closing arguments. In fact, Dandurand himself did not clearly explain how his testimony would be helpful, stating only that he had expertise on "the nature of deceptive practices" that would assist the trier of fact. (Dandurand Dep. (Ex B) at 133:15-134:8). In addition, unfair prejudice would result from cloaking what is essentially closing argument by counsel as an expert report, because of the "talismanic significance" of expert reports. *See Frazier*, 387 F.3d at 1263. This case is not unlike *F.T.C. v. Washington Data Resources,* 2011 WL 2669661 (M.D. Fla. July 7, 2011), in which the Federal Trade Commission moved to either exclude or limit the testimony of a proposed expert witness for the defendant on the issue of whether the defendant's marketing practices were deceptive. *Id.* at *1.

In *Washington Data Resources,* the expert had concluded in his report that "a reasonable consumer is not likely to be misled by the actions or marketing practices" at issue. *Id.* at *2. The court found that the exclusion of the expert's testimony was warranted by both *Daubert* and Rule 403, on the basis that the opinion concerned a matter within the knowledge of the fact finder, subject to primary evidence from consumers. *Id.* The Court further stated that the testimony concerned no matter "beyond the understanding of the average lay person" and that it

appeared incomplete, unreliable, and unhelpful to the identification of a deceptive marketing practice. *Id.* The same is true here, and the Court should strike the Dandurand Report.

### IV. Dandurand Lacks the Expertise Necessary to Opine on the Matters Expressed in His Expert Report.

Expert testimony is admissible only if the testimony is given by a witness who is qualified as an expert by knowledge, skill, experience, training, or education. *See Cordoves,* 104 F. Supp. 3d at 1357. Assuming an expert is qualified to testify, the expert may testify only about matters within the scope of his or her expertise. *Id.* at 1358; *Feliciano v. City of Miami Beach*, 844 F. Supp. 2d 1258, 1262 (S.D. Fla. 2012) ("Determining whether a witness is qualified to testify as an expert requires the trial court to examine the credentials of the proposed expert in light of the subject matter of the proposed testimony."). In other words, expert testimony regarding matters outside of the witness's expertise is inadmissible, even if the expert is qualified to testify about other matters. *See Cordoves*, 104 F. Supp. 3d at 1358.

Where a witness is qualified by experience alone, it is incumbent upon the witness to demonstrate that the opinion being offered is within the witness' experience and expertise. *See Frazier*, 387 F.3d at 1261; *Pleasant Valley*, 2014 WL 2855062, at *3. "[I]f the witness is relying solely or primarily on experience, then the witness must explain *how* that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Frazier*, 387 F.3d at 1261 (emphasis in original); *Pleasant Valley*, 2014 WL 2855062, at *3.

In *Pleasant Valley*, the borrower in a failed loan transaction sued an escrow agent for wrongful disbursement of a loan deposit, and offered the expert testimony of Donald Coker, an experienced banking executive, on the issue of an escrow agent's standard of care. 2014 WL 2855062, at *3. The court, while acknowledging Coker's extensive banking experience, impressive resume, and remarkable success in the banking world, still rejected him as an expert witness "regarding the contours of an escrow agent's responsibilities," and how the defendant should have conducted itself as escrow agent during the transaction at issue. In so holding, the Court stated:

> The Court finds that Coker's limited experience relating to the duties of an escrow agent does not qualify him to express these opinions. Coker has not himself performed the duties of an escrow agent since 1972. Nor does Coker have significant formal training

9

> or education on the matter. Though Coker has been involved with numerous loan transactions for which an escrow agent's services were used-including instances where his own bank acted as escrow agent-the Court does not view this involvement as enabling Coker to testify regarding the details of an escrow agent's role or obligations.
> …
> Because Coker's experience bears an inadequate relationship to the subject of his opinions, it does not qualify him as an expert witness on the matter, and his testimony is properly excluded.

*Id.* at *4.

In this case, Dandurand is proffered as qualified to opine whether the alleged sales practices of Vivint's salespersons are deceptive and provide an unfair advantage in the marketplace and over the customer, presumably based on his experience as Deputy Attorney for the State of Missouri.[5] However, even if his legal opinions were permissible (which they are not as discussed above), Dandurand is not qualified to offer the opinions he makes as to the claims in this case. Specifically, while Dandurand appears to have certain expertise overseeing the prosecution of consumer protection-related cases in Missouri, none of the twelve customers in the "representative scenarios" contained in the Dandurand Report reside in Missouri. (Dandurand Depo. (Ex. B) at 117:23-118:19). Moreover, there is nothing in the Dandurand Report that would connect his experience to analyzing the purported sales practice models under Florida and Eleventh Circuit law. At his deposition, Dandurand admits that he is not admitted to the Florida Bar. (*Id*. at 73:20-22). He further admits that he does not recall trying any cases where Florida law was applied to deceptive trade practices. (*Id.* at 74:5-10). Dandurand further admits that he has no experience with the FDUTPA. (*Id.* at 114:15-18). He also admitted that he

---

[5] Dandurand's appearance as an expert in this case may also run afoul of sections 105.452(2) and (3), Missouri Statutes, which prohibit an elected or appointed official from using or disclosing confidential information by reason of his employment or official capacity in any manner with intent to result in financial gain for himself. Section 105.454(1.)(6) prohibits an elected or appointed official serving in an executive or administrative capacity from performing any service after termination of his office or employment in relation to any case, decision, proceeding or application with respect to which he was directly concerned or in which he or she personally participated during the period of his service or employment. The Missouri Attorney General is part of the executive branch. *See State v. Planned Parenthood of Kansas*, 66 S.W.3d 16, 20 (Mo. 2002).

was not familiar with the 11th Circuit standard jury instructions related to deceptive and unfair trade practices. (*Id.* at 130:17-20).

Similarly, there is nothing to support any argument that Dandurand had the expertise to design a statistically appropriate process or methodology to review and analyze the information provided to him by Plaintiffs, to review alleged information from various states throughout the country to determine "geographic ubiquity" in the purported sales practices of a nationwide, for-profit company, or to determine whether he possessed sufficient data to reach his conclusions or whether additional data might be needed. Indeed, it appears Dandurand employed an untrained, almost haphazard approach in reviewing the data and preparing the report. He admits that he reviewed certain documents and sound recordings, all selectively provided to him by Plaintiffs' counsel, with the recordings he actually listened to selected by him at random, without any selection geographically or otherwise to ensure a random sampling from around the country. (Dandurand Dep. (Ex. B) at 65:2-65:10). He admits that he did not review all of the sound recordings, only fifty or so (*id.* at 61:9-21). He admits that he has no professional experience in selecting a representative sample (*id.* at 62:2-21), or in marketing for a "for profit" company (*id.* at 63:24-64-2). He also admits that he selectively chose the twelve customers included in the "representative scenarios," with a deciding factor being the "content of the complaint," and that he chose twelve for "efficiency purposes" and because he "thought" that was "enough of a cross-sample." (*Id.* at 116:17-117:14). He further admits he has no idea how many salespersons were employed by Vivint during the relevant period (*id.* at 124:12-19), which would appear significant to assessing the "geographic ubiquity" in the purported sale practices.

In sum, the Dandurand Report fails to explain *how* Dandarund's experience leads to his particular conclusions, why his experience is a sufficient basis for his opinions, or how his expertise is reliably applied to the facts of this case to reach his opinions – all of which are required for the expert testimony to be found reliable. *See Frazier*, 387 F.3d at 1261; *Pleasant Valley*, 2014 WL 2855062, at *3. Therefore, this Court should exclude the Dandurund Report.

**V.     The Dandurand Report Does Not Rely on Sufficient and Reliable Facts or Data.**

Expert testimony must be based on sufficient facts or data. *See Cordoves*, 104 F. Supp. 3d at 1360 (citing F.R.E. 702(b)). Here, it is clear that Dandurand's opinions do not comply with this requirement. While he opines, for instance, that the alleged sales practices were deceptive and supported by Vivint management, Dandurand admits that he only reviewed the purported

"data which was provided to him by Plaintiffs' counsel" and failed to do any independent investigation. (Dandurand Dep. (Ex. B) at 12:21-13:8 (admitting he was not involved in compiling maps regarding complaints and did not independently confirm information); 16:1-16:7 (admitting he was not involving in compiling chart summarizing the ages of complainants and did not independently investigate information therein); 112:4-24 and 113:21-114:10 (admitting that he did not speak to any Vivint salespersons or any ADT customers, and that he assumed what was presented to him was true). He admits he did not interview any customers, salespersons, or salespersons' managers (*id.* at 126:4-25), and that he did not review any sales training materials, training videos, or speak to any Vivint personnel who trained salespersons (*id.* at 124:20-125:7). This complete lack of independent investigation, in itself, renders his opinion suspect. *See Pods Enters., Inc. v. U-Haul Intern., Inc.,* 2015 WL 1097374, at *4 (M.D. Fla. Mar. 11, 2015) (jury did not have to accept expert's methodology or conclusions, especially as documents were provided by counsel rather than through expert's independent research). Critically, even what Dandurand did review was incomplete and one-sided. For instance, he admits that he neither reviewed all of the disclosures in this case nor listened to the entirety of the sound recordings he was provided. (Dandurand Dep. (Ex. B) at 55:7-23). He further admits that he does not know whether he listened to any of the sound recordings for the twelve specific individuals referenced in his expert report, and that he listened to the sound recordings randomly, without employing any methodology, such as comparing sound recordings to customer declarations or other data. (*Id.* at 60:8-61:6). Moreover, Dandurand was unable to explain numerical discrepancies in the "data" provided by Plaintiffs. (*Id.* at 29:22-32:10) (admitting that he does not know why the total number of complaints from April 2013 to July 2017, in one presentation of the data, would be less than the number of complaints in a shorter period, from April 2013 to May 2017, in another presentation).

   The complete lack of any independent investigation or verification reveals that the actual purpose of the Dandurant Report is to parrot the incomplete, one-sided stories provided by Plaintiffs, disguised as an expert report. Dandurand admits that the "representative scenarios" upon which he basis his opinions are synopses of the information provided to him by Plaintiffs' counsel, simply "descriptions of what [he] read". (*Id.* at 121:2-5; 122:18-123:4). Such an "expert report" is improper and prejudicial, and it should be rejected. *See Tillman v. C.R. Bard, Inc.,* 96 F. Supp. 3d 1307, 1330 (M.D. Fla. 2015) (rejecting "plaintiff-slanted summaries" of

documents requiring no expertise to understand, noting an expert cannot be presented to the jury "solely for the purpose of constructing a factual narrative based upon record evidence," and precluding the expert from testifying to "simple inferences drawn from uncomplicated facts that serve only to buttress plaintiff's theory of the case"); *see also In re Seroquel Prods. Liab. Litig.*, 2009 WL 3806436, at *4 (M.D. Fla. July 20, 2009) ("Plaintiffs' counsel may not simply use these expert witnesses to provide a narrative history of [the manufacturer's] marketing and labeling practices, or to make points that are within the province of counsel, rather than an expert witness.").

In summary, Dandurand failed to rely on sufficient and reliable facts or data, rendering his opinions unreliable and improper. Therefore, he should not be permitted to offer expert testimony in this litigation.

## CONCLUSION

For all of these reasons, Defendant, Vivint, Inc., respectfully requests that the Court exclude Plaintiffs' expert Joseph Dandurand's testimony and report.

## RULE 7.1(A)(3) CERTIFICATION

Pursuant to Local Rule 7.1(a)(3), I hereby certify that on October 2, 2017 counsel for Vivint (Lawrence D. Silverman) conferred by telephone with counsel for Plaintiffs (Richard G. Sander) in a good faith effort to resolve the issues raised by this Motion. Plaintiffs' counsel advised that Plaintiffs oppose the relief requested herein.

## REQUEST FOR HEARING

Vivint submits that oral argument on this Motion would be helpful to the Court given the complex nature of some of the issues of this case and the importance of this expert to Plaintiffs' case. Vivint believes that 30 minutes would be sufficient for argument on this Motion.

Respectfully submitted,

*/s/ Lawrence D. Silverman*
Lawrence D. Silverman (FBN 7160)
Email: lawrence.silverman@akerman.com
Sandra J. Millor (FBN 13742)
Email: sandra.millor@akerman.com
Bryan T. West (FBN 83526)
Email: bryan.west@akerman.com
**AKERMAN LLP**
Three Brickell City Centre
98 Southeast Seventh Street, Suite 1100

13

Miami, Florida  33131
Phone:  (305) 374-5600
Fax:  (305) 374-5095

*-and-*

David S. Wood (FBN 289515)
Email:  david.wood@akerman.com
**AKERMAN LLP**
Post Office Box 231
Orlando, Florida  32802-0231
Phone: (407) 423-4000
Fax: (407) 843-6610

*-and-*

Ashley A. Sawyer (FBN 0012131)
E-mail:  ashley.sawyer@akerman.com
**AKERMAN LLP**
350 East Las Olas Boulevard, Suite 1600
Fort Lauderdale, Florida  33301
Phone:  (954) 463-2700
Fax:  (954) 463-2224

*-and-*

E. Dylan Rivers (FBN 0669555)
Email: drivers@ausley.com
Martin B. Sipple (FBN 0135399)
Email: msipple@ausley.com
Anthony L. Bajoczky, Jr. (FBN 96631)
Email: tbajoczky@ausley.com
Pamela C. Marsh (FBN 0057400)
Email: pmarsh@ausley.com
**AUSLEY MCMULLEN**
Post Office Box 391
123 South Calhoun Street (32301)
Tallahassee, FL 32302
Phone: (850) 224-9115
Fax: (850) 222-7560

*-and-*

Matthew A. Steward (*admitted pro hac vice)*
Email: mas@clydesnow.com
Timothy R. Pack (admitted *pro hac vice*)

14

Email: trp@clydesnow.com<br>
**CLYDE SNOW**<br>
201 South Main Street, Suite 1300<br>
Salt Lake City, Utah 84111<br>
Phone: (801) 322-2516<br>
Fax: (801) 521-6280<br>

*Counsel for Defendant Vivint, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 10th day of October, 2017, a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system, which will send an electronic notice to all counsel of record.

*/s/Lawrence D. Silverman*<br>
Lawrence D. Silverman

**SERVICE LIST**

C. Sanders McNew
McNew P.A.
2385 NW Executive Center Drive, Suite 100
Boca Raton, Florida 33431
Tel: (561) 299-0257
Fax: (561) 299-3705
Email: mcnew@mcnew.net

Richard G. Sander (admitted *pro hac vice*)
S. Kirk Ingebretsen (admitted *pro hac vice*)
Daniel E. Rohner (admitted *pro hac vice*)
Eric J. Hobbs (admitted *pro hac vice*)
Shook, Hardy & Bacon LLP
1660 17th Street, Suite 450
Denver, Colorado 80202
Tel: (303) 285-5300
Email: rsander@shb.com
Email: kingebretsen@shb.com
Email: drohner@shb.com
Email: ehobbs@shb.com

Charles C. Eblen (admitted *pro hac vice*)
Aaron K. Kirkland (admitted *pro hac vice*)
Jason R. Scott (admitted *pro hac vice*)

Shook, Hardy & Bacon, LLP
2555 Grand Boulevard
Kansas City, MO 64108
Tel: (816) 474-6550
Email: ceblen@shb.com
Email: akirkland@shb.com
Email: jscott@shb.com